[This opinion has been published in *Ohio Official Reports* at 66 Ohio St.3d 458.]

HECHT, APPELLEE, V. LEVIN, APPELLANT.

[Cite as *Hecht v. Levin*, 1993-Ohio-110.]

*Torts—Defamation—Attorneys at law—Complaint filed with grievance committee of local bar association is part of a judicial proceeding—Statement made in course of attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon, when—R.C. 2305.28 does not apply to attorney disciplinary proceedings.*

1. A complaint filed with the grievance committee of a local bar association is part of a judicial proceeding.

2. A statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement bears some reasonable relation to the proceeding. (Surace v. Wuliger [1986], 25 Ohio St. 3d 229, 25 OBR 288, 495 N.E.2d 939, approved and followed.)

3. R.C. 2305.28 does not apply to attorney disciplinary proceedings held under the authority of the Supreme Court of Ohio.

(No. 92-286—Submitted February 10, 1993—Decided June 23, 1993.)

Appeal from the Court of Appeals for Cuyahoga County, Nos. 59445 and 59496.

———————————

{¶ 1} On June 1, 1987, appellee Emanuel H. Hecht filed a complaint for libel and slander against appellant Michael D. Levin. Levin answered and cross-claimed against the Cuyahoga County Bar Association ("the bar association"). The impetus for Hecht's lawsuit was a complaint that Levin had lodged against him with the bar association in June 1986. Levin's grievance alleged that Hecht, an attorney, knowingly caused Hecht's father, Jacob Hecht, to sign a "paper" while Jacob was

incompetent, and that this action resulted in a monetary loss to Jacob. (Levin states that he is the grandson of Jacob Hecht's wife, Esther Hecht.)

**{¶ 2}** The trial court initially denied Levin's motion to dismiss, in which he argued that the statements in his grievance were absolutely privileged against an action for slander and libel. On February 9, 1990, however, the court granted Levin's motion for summary judgment as well as the bar association's motion to dismiss Levin's third-party complaint. Hecht appealed this order to the Eighth District Court of Appeals. On March 7, 1990, before Hecht appealed, the trial court vacated its previous denial of Levin's motion to dismiss. The court of appeals consolidated the appeal of this order with the prior appeal. The court of appeals reversed, holding that "[t]he absolute privilege does not apply in situations where a dissatisfied litigant complains to the bar association about the conduct of an attorney who did not represent him." Finding genuine issues of fact to exist, the court of appeals remanded the cause to determine whether Levin's statements were libelous and/or slanderous and whether there was publication of the statements.

**{¶ 3}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

—————————

*Richard E. Kleinman*, for appellee.

*Morris Levin Co., L.P.A., Morris Levin* and *Daniel J. Levin*; *Levin & Levin* and *James A. Levin*; *Paris & Paris* and *Thomas A. Paris*, for appellant.

*Albert L. Bell*; *Arter & Hadden* and *Geoffrey Stern*, urging reversal for *amicus curiae*, Ohio State Bar Association.

*Lee I. Fisher*, Attorney General, and *Loren L. Braverman*, Assistant Attorney General, urging reversal for *amici curiae*, Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio and Office of Disciplinary Counsel.

—————————

MOYER, C.J.

{¶ 4} We are asked to decide what privilege attaches to statements made in a grievance filed with a certified grievance committee of a local bar association. For the reasons stated below, we hold that it is an absolute privilege.

{¶ 5} As an initial matter, we address Levin's argument that Hecht cannot maintain a defamation action because the filing of a grievance, which is confidential, is not a publication. The publication of defamatory matter is an essential element to liability for defamation. "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." 3 Restatement of the Law 2d, Torts (1965), Section 577(1). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a*. Also, it is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. See *id.* at Comment *b*. Ohio law recognizes that publication of defamation consists in communicating it to a person or persons other than the person libeled. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718.

{¶ 6} Based on the above authority, we hold that appellant's grievance complaint filed with the local bar association constituted a publication. For the purposes of defamation, "publication" does not take on its more common connotation of widespread dissemination. We discern no reason to disturb the settled law of defamation and create an exception to the definition of "publication" for confidential communications to a bar association.

{¶ 7} A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears. *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939, syllabus. In *Surace*, the defendants in a libel action had filed a pleading in a Racketeer Influenced and Corrupt Organizations Act ("RICO") action that described the plaintiff as an

"underworld figure." The plaintiff was not a party in the RICO action. This court, after a thorough historical review of the rule of privilege in judicial proceedings, adopted the rule of absolute privilege. The sole proviso was that the statement must bear "some reasonable relation to the judicial proceeding in which it appears." *Id*. The fact that the plaintiff was not a party in the RICO action did not affect the existence of the privilege. *Id.* at 234, 25 OBR at 293, 495 N.E.2d at 943. Although we recognized that the rule caused some hardship to the plaintiff, who had no alternative remedy to protect his reputation, we reasoned that the cogent public policy of guaranteeing the free flow of information in a judicial proceeding outweighed the hardship to the plaintiff. *Id.* at 234, 25 OBR at 292, 495 N.E.2d at 943.

{¶ 8} We must decide in this case whether filing a grievance with a local bar association is a "judicial proceeding" within the meaning of *Surace*. Section 2(B)(1)(g), Article IV of the Ohio Constitution grants to this court original jurisdiction in the discipline of attorneys in Ohio. Pursuant to this responsibility, this court created Gov.Bar R. V to govern the disciplinary procedure for members of the bar. As a result, "[i]t is now well established that *** all matters relating to the discipline and reinstatement of attorneys at law are inherently judicial in nature and are exclusively under the control of the judicial branch of the government." *In re Nevius* (1963), 174 Ohio St. 560, 562, 23 O.O.2d 239, 240, 191 N.E.2d 166, 169.

{¶ 9} In Gov.Bar R. V(1)(A), we created the Board of Commissioners on Grievances and Discipline ("the board") to assist this court in carrying out its disciplinary responsibilities. The board has exclusive jurisdiction to recommend disciplinary action against an attorney. Gov.Bar R. V(2). The board is empowered to receive evidence, preserve the record, make findings and submit recommendations to this court concerning complaints of attorney misconduct. Gov.Bar R. V(2)(B)(1). No complaint can be filed with the board, however, until it has been investigated by a certified grievance committee of a bar association or

the Disciplinary Counsel and the committee or counsel has determined that the complaint is warranted.

{¶ 10} The Ohio State Bar Association and any of the local bar associations can designate a grievance committee which shall, upon satisfying specific standards, be certified by the board to investigate allegations of misconduct by members of the bar and to initiate complaints. Gov.Bar R. V(3)(C). "[A] Certified Grievance Committee shall investigate any matter filed with it or that comes to its attention and may file a complaint [with the board] pursuant to this rule in cases where it finds probable cause to believe that misconduct has occurred ***." Gov.Bar R. V(4)(C). Gov.Bar R. V sets out specific requirements for filing a complaint with the board, and a disciplinary proceeding may be initiated only upon strict compliance with these requirements. *Smith v. Kates* (1976), 46 Ohio St.2d 263, 75 O.O.2d 318, 348 N.E.2d 320. Pursuant to its constitutional mandate, this court has given local bar associations an essential role in the process of disciplining members of the bar.

{¶ 11} This court's imposition of discipline on an attorney or judge is only the end point of a process that begins with the filing of a grievance with a bar association or Disciplinary Counsel. Under Gov.Bar R. V, in order for the board to consider a complaint of attorney misconduct and ultimately make recommendations to this court, a certified grievance committee (or Disciplinary Counsel) must file a formal complaint based on an investigation of the alleged misconduct. In order for a certified grievance committee to take action under Gov.Bar R. V, someone must bring the alleged misconduct to the committee's attention. This is usually accomplished when a person with knowledge of the misconduct files a complaint with his or her local bar association. This court, therefore, relies on filings with a local bar association, such as the one at the very heart of this case, to initiate the Gov.Bar R. V disciplinary procedure.

**{¶ 12}** Accordingly, we hold that filing a grievance complaint with a local bar association is a "judicial proceeding" because such a filing initiates the purely judicial disciplinary procedure created by this court pursuant to Article IV of the Ohio Constitution. Because statements made in judicial proceedings enjoy an absolute privilege, we hold that a statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement is relevant and material to the proceeding. The privilege exists irrespective of the relationship between complainant and attorney, and irrespective of whether the statement was made in bad faith.

**{¶ 13}** Public policy supports this conclusion. Just as we held in *Surace* that the truth-seeking process in litigation demands the free and unencumbered exchange of statements, so does the process of maintaining the ethical standards of the legal profession. A qualified privilege would open the door to retaliatory suits such as the one in this case and would chill the reporting of attorney misconduct. Attorneys are particularly well-armed to vex complainants with retaliatory lawsuits. A claim of bad faith is easily made, and even if the defamation suit ultimately fails on its merits, the complainant, now defendant, must endure the expense, effort and emotional anguish of defending the suit. We believe to be overstated the warning that an absolute privilege will open a "Pandora's box" of grievances against attorneys. The attorney disciplinary process has been carefully designed to separate the wheat from the chaff. A grievance is kept private until a panel of the board makes a finding of probable cause and certifies it to the board. Gov.Bar R. V(11)(E)(2). Investigation and independent review of a grievance occur at several stages before this court makes its own independent determination of discipline. Gov.Bar R. V(4)(C), 6(D)(1), 6(G) and 6(K). These procedures assure that clearly frivolous complaints are summarily dismissed, with little emotional, professional, or financial toll on the subject of the complaint. For these reasons, we conclude that the balance between encouraging people to come forward with legitimate

complaints and protecting attorneys from harassment is best struck by means of absolute immunity.

**{¶ 14}** In addition, judges and lawyers are obligated by their codes of ethics to report attorney misconduct of which they become aware. Canon 3(B)(3) of the Code of Judicial Conduct; DR 1-103(A). The rule we adopt today encourages judges and attorneys to observe their codes of professional conduct without hesitation or fear of retaliation. Lest an attorney involved in litigation be tempted to initiate a disciplinary proceeding to gain a tactical advantage over opposing counsel in litigation, we note that such conduct is itself a disciplinary violation. DR 7-102(A). Our holding today applies to civil actions only and does not prevent appropriate disciplinary action against lawyers who file bogus grievances to obtain a tactical advantage in a lawsuit.

**{¶ 15}** Finally, we address appellee's argument that R.C. 2305.28 creates a qualified privilege for statements made in attorney grievance proceedings. R.C. 2305.28, as in effect at the time the alleged defamation occurred, did not address statements made by outside persons to peer review or professional standards review committees. 136 Ohio Laws, Part I, 708. The statute created a qualified immunity applying only to members of such committees. *Id.* In July 1986, one month after appellant filed his grievance, however, the General Assembly amended R.C. 2305.28 to include subsection (C), which provided:

"No person who provides information to a peer review committee or a professional standards review committee of a state or local professional organization *** without malice and in the reasonable belief that the information is warranted by the facts known to him is liable in damages in a civil action as a result of providing that information." 141 Ohio Laws, Part I, 449.

**{¶ 16}** Due to a 1992 amendment, subsection (C), slightly modified, is now labeled subsection (D). S.B. No. 84.

{¶ 17} R.C. 2305.28 clearly creates a qualified privilege within its purview. On its face, moreover, it purports to apply to grievances filed against lawyers with local bar associations. For the reasons that follow, however, we hold that it does not.

{¶ 18} The statute applies, in addition to attorneys, to chiropractors, veterinarians, real estate brokers, architects, engineers, certified public accountants, public accountants, and registered nurses. Each of these professions has some internal mechanism for policing professional standards. What distinguishes the legal profession from these other professions, however, is the pedigree of that mechanism. No other profession is supervised directly, by constitutional mandate, by the judicial branch of government. The internal policing of these professions takes place at a lower, more private level. Any involvement of the courts in the discipline of the members of these professions is indirect. As we construe the statute, the General Assembly intended the qualified privilege to apply only to proceedings in professional standards review committees that are not an integral part of the process of direct supervision by the judicial branch.

{¶ 19} A contrary reading of the statute would render it unconstitutional. The Constitution of Ohio places the supervision of attorneys exclusively in the judicial branch. Any attempt to circumvent the procedures promulgated by the Supreme Court of Ohio pursuant to its constitutional mandate is an impermissible incursion into this court's plenary authority. *Smith v. Kates*, *supra*, 46 Ohio St.2d at 265, 75 O.O.2d at 319, 348 N.E.2d at 322. In *Smith*, plaintiffs, who were private citizens, initiated original actions in this court, seeking discipline of an attorney and a judge pursuant to R.C. 4705.02. We granted defendants' motions to dismiss because plaintiffs had failed to comply with the procedures in Gov.Bar R. V. We further declared that R.C. 4705.02, which purported to create original jurisdiction in this court, the courts of appeals, and the courts of common pleas over attorney disciplinary matters, to be "of no force and effect with regard to our jurisdiction

over the discipline of attorneys." *Id.* at 266, 75 O.O.2d at 319-320, 348 N.E.2d at 322. We further declared, "[o]ur authority is exclusive and absolute. A disciplinary proceeding may be initiated only by compliance with Gov. [Bar] R. V." *Id*. at 266, 75 O.O. 2d at 320, 348 N.E.2d at 322.

{¶ 20} R.C. 2305.28, if construed as urged by appellee, would be a more subtle but no less invalid intrusion upon our authority. The existence and nature of a privilege for disciplinary complaints affects the viability of the process. If, for example, the General Assembly had prohibited private citizens, non-clients, or non-parties from filing any complaint against an attorney, it would be a clear violation of the judiciary's plenary power over attorney discipline. The difference between this hypothetical and the weakening of the privilege is one of degree and not of kind.

{¶ 21} A closely analogous case decided by a sister state bolsters our reasoning. In *Ramstead v. Morgan* (1959), 219 Ore. 383, 347 P.2d 594, the Supreme Court of Oregon held that statements made against an attorney in a grievance proceeding, which it termed "quasi-judicial," are absolutely privileged against libel and slander actions. In *Ramstead*, just as in the instant case, a state statute purported to grant a qualified privilege to persons making complaints as to the conduct of an attorney. The Oregon Supreme Court declared the statute void as a serious and unconstitutional incursion into its own exclusive domain. *Id.* at 399-400, 347 P.2d at 601-602. We share the Oregon court's conviction regarding the gravity of a legislative alteration of the privilege.

{¶ 22} For these reasons, we hold that: (1) a complaint filed with the grievance committee of a local bar association is part of a judicial proceeding; (2) a statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement bears some reasonable relation to the proceeding; and (3) R.C. 2305.28 does not apply to

attorney disciplinary proceedings held under the authority of the Supreme Court of Ohio.  The judgment of the court of appeals is reversed.

*Judgment reversed.*

A.W. SWEENEY, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS and PFEIFER, JJ., dissent.

———————————

PFEIFER, J., dissenting.

**{¶ 23}** In the business of practicing law, reputation is a successful attorney's greatest asset.  To leave something of such value open to the prey of the malicious makes little sense.

**{¶ 24}** Access to Ohio's courts is guaranteed to all Ohioans.  "***[E]very person, for an injury done him in his land, goods, person or *reputation*, shall have remedy by due course of law***." (Emphasis added.) Section 16, Article I, Ohio Constitution.  The Constitution does not exclude attorneys from this guarantee.  By establishing an absolute privilege for those who report attorneys to bar associations, we relegate lawyers to second-class citizenship -- permitted to protect the reputation of others, but not their own.

**{¶ 25}** The majority overestimates the added deterrent effect that the absolute privilege will have on lawyers who are inclined to file retaliatory lawsuits against those who report them to the bar associations.  Under current provisions of the law, attorneys are unlikely to engage in malicious, retaliatory conduct because of the ramifications of Civ. R. 11.  An attorney filing a groundless suit may also be subject to disciplinary action:  "*** [A] lawyer shall not *** [f]ile a suit, assert a position, conduct a defense ***when he knows or when it is obvious that such action would serve merely to harrass or maliciously injure another." DR 7-102(A)(1).

**{¶ 26}** Extension of absolute immunity amounts to an unneeded, unconstitutional shield which obstructs the ability of an innocent, conscientious attorney to protect his or her reputation.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

———————————