**BALL, Appellant,**

v.

**BRITISH PETROLEUM OIL et al., Appellees.**

[Cite as *Ball v. British Petroleum Oil* (1995), 108 Ohio App.3d 129.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–091.

Decided Dec. 29, 1995.

*John B. Fisher,* for appellant.

*Douglas G. Leak,* for appellee.

---

*Per Curiam.*

Appellant, David Lee Ball, lost his job after he was accused of being involved in illegal drug transactions while working on the premises of a British Petroleum Oil ("BP Oil") refinery located in Oregon, Ohio. Appellant subsequently sued appellees, BP Oil and the plant manager for BP Oil at the Oregon, Ohio facility, for defamation. Appellees filed a motion for summary judgment, which was granted by the Lucas County Court of Common Pleas on February 14, 1995.

Appellant is appealing the trial court's decision and presents two assignments of error which are:

"I. The trial court erred in granting summary judgment to defendants British Petroleum Oil and John Jacobson.

"II. The trial court erred in not finding that the offending memorandum constituted libel *per se.* "

This court, like all Ohio courts, is guided by the provisions of Civ.R. 56(C) when determining whether summary judgment must be granted in a case. Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Keeping this standard in mind, we now consider the first assignment of error.

Depositions and exhibits included in the record establish the following scenario of events which led to appellant losing his job and eventually filing this lawsuit. BP Oil owns and operates a refinery located in Oregon, Ohio. BP Oil contracts with several outside companies to provide services at the refinery. For instance, an outside company operated a cafeteria located on the refinery property. A second outside company contracted with BP Oil to provide security at the

refinery. A third outside company, which employed appellant, contracted with BP Oil to clean out tanks, sewers, etc.

In August 1992, personnel from the security company were alerted by the personnel from the cafeteria that an illegal drug transaction had allegedly occurred in the cafeteria. The security personnel relayed the report to a BP Oil employee, who was the director of security at the refinery. The director of security then personally joined one of the officers from the security company in conducting an investigation.

The director of security and the security company officer spoke with the manager of the cafeteria, who made the original allegation that an illegal drug transaction had occurred on the refinery premises. The manager of the cafeteria reported that the cashier from the cafeteria came into her office with drugs. During her deposition, the manager testified:

"It all comes down to the day she [the cashier] came in the office and showed me her little foil pack and asked me if I knew what it was and I said yes, I do. And I asked her, I says, where did you get it? She said from the big guy who comes in here, you know who he is, and I knew who he was. And that's how I knew him. I mean, I never talked to him personally, never, you know—maybe I said hi to him if he went through the line but I said hi to everybody that went through the line, it's my job."

When she was asked if the cashier gave any more description of the man who provided the drugs, the manager responded:

"She said the guy that comes in here every day and talks to me that wears the blue suit. All the different divisions of BP wore different coveralls. He wore the blue suit."

She testified that she told the cashier not to use the drugs at work, and that the cashier never gave her the foil packet.

She was disturbed by the incident, so she told her supervisor, and he reported it to security. The director of security and one of the officers from the security company then interviewed the cafeteria manager and asked her to review copies of pictures from company I.D. cards to see if she could pick out the picture of "the big guy." She complied, and spent nearly two hours looking through hundreds of pictures. She eventually chose two or three pictures of individuals she thought might be "the big guy." One of the pictures she chose was appellant's. She testified that she chose two pictures because "[i]f you'd look at the two photographs you'll notice they're both—you know, the photographs aren't clear, you know, they're not the greatest pictures."

Other cafeteria workers were interviewed by the director of security and the security company officer. None had seen any illegal drug transactions on

refinery premises. None had ever seen appellant give the cashier illegal drugs. The director of security testified in his deposition that other individuals had implicated appellant as being involved in drug dealing at the refinery, but he could not remember any of the names of the individuals he claimed had made the allegations.

Appellant was interviewed by the director of security while the security company officer and appellant's supervisor were present. He denied the allegations. The officer from the security company testified in his deposition that appellant got defensive, but he believed that appellant's reaction was appropriate since appellant's employment was threatened.

The director of security and the security company officer then took the cafeteria manager to a booth at the main gate of the refinery and had appellant's supervisor bring appellant to the gate. When appellant stepped from the truck driven by his supervisor, the cafeteria manager stated that appellant was "the big guy." Oregon police officers were then called by the director of security.

When they arrived, the Oregon police officers got permission from appellant to search his personal truck for drugs. A search revealed nothing. Appellant was told he could take his truck and leave. He was barred from returning to the BP Oil property.

The officer from the security company stated that when the investigation was concluded he had doubts about whether appellant was involved in any illegal drug activity. He initially thought that appellant had been merely transferred to a different refinery to avoid the allegations, and was surprised to learn a few days later that appellant had been fired by his employer. According to the security company officer, no one other than the cafeteria manager had ever identified appellant as being involved in illegal drug activity, and the investigation did not reveal any other evidence to link appellant to illegal drug activity.

The plant manager for the BP Oil refinery in Oregon, Ohio was given an oral report by the director of security. The director of security told the plant manager that appellant "had been seen passing an illegal substance" to the cafeteria cashier. The plant manager testified in his deposition that he had been told that "there had been an incident, there had been an eyewitness identification." He also testified that he had been told that both persons involved in the illegal drug transaction had been barred from returning to the refinery.

A few days after appellant and the cafeteria cashier were barred from returning to the refinery, the plant manager signed a memorandum about the drug and alcohol policy of BP Oil. One paragraph in the memorandum read:

"On August 13, 1992, two contractor employees were terminated and removed from BP Oil Toledo Refinery, for using and selling illicit drugs. This action was taken after BP Oil conducted a thorough investigation."

A cafeteria employee gave a sworn affidavit that (1) she saw the memo when it was posted on a bulletin board at the refinery, and (2) she knew when she read the memo that appellant was one of the two individuals referred to in the memo.

In Ohio, liability for defamation generally exists when a false and defamatory statement about a person is published to a third person. *McCarthy v. Cincinnati Enquirer, Inc.* (1956), 101 Ohio App. 297, 300, 1 O.O.2d 131, 133, 136 N.E.2d 393, 395. If the defamatory statement is privileged, liability will attach only if actual malice is proved. *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus.

Appellant agrees with appellees that a qualified privilege exists for communications made in the workplace, and that the qualified privilege can be claimed by appellees in this case. See *Gray v. Allison Div., Gen. Motors Corp.* (1977), 52 Ohio App.2d 348, 351, 6 O.O.3d 396, 398, 370 N.E.2d 747, 750. However, appellant contends that summary judgment should not have been granted in this case because the record contains sufficient evidence to allow reasonable minds to reach different conclusions on the issue of whether or not appellees acted with actual malice. Clear and convincing proof of actual malice defeats the qualified privilege for communications which occur in the workplace. *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus. The Supreme Court of Ohio has ruled that "[i]n a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* This court has previously noted that an appellant "must show sufficient facts to demonstrate the actual malice so that a reasonable jury could find that the actual malice was shown with convincing clarity to defeat [appellees'] assertion of a qualified privilege, even in a summary judgment case. * * * Ultimately, the question of whether actual malice existed is a question of fact for a jury to decide." *Stresen–Reuter v. Hull* (Aug. 3, 1990), Sandusky App. No. S–89–27, unreported, 1990 WL 109877.

After careful review of the record, we find that appellant has not met his burden of showing sufficient facts to allow reasonable minds to conclude that the plant manager at the refinery acted with actual malice. The plant manager's deposition testimony demonstrates that he received an oral report from the director of security that appellant was involved in illegal drug activities and had been positively identified by an eyewitness. He was further informed that appellant was barred from returning to the refinery. Acting on that information,

the plant manager signed the memo that appellant alleges was a publication of defamatory statements about appellant. Appellant has not provided any evidence that would allow reasonable minds to conclude that the plant manager acted with actual knowledge that the report he received was untrue, or that he acted with reckless disregard for the truth when he accepted the statements of the director of security as true. Nothing in the record shows that the plant manager should have known that he could not reasonably rely on the report he received from the director of security. Accordingly, when the undisputed facts relating to the plant manager are viewed in a light most favorable to appellant, reasonable minds can only conclude that the plant manager is entitled to summary judgment as a matter of law. The summary judgment granted to the plant manager is affirmed.

The trial court ruled that the plant manager was the only person who had "published" any potentially defamatory statements about appellant. Since the trial court determined that the record contained no evidence that the plant manager acted with actual malice, the trial court concluded that BP Oil had no liability for any damages suffered by appellant. The trial court further stated that it was irrelevant whether the director of security or the officer from the security company acted with actual malice because only the plant manager was responsible for the publication of the statements.

■ Appellant argues that the trial court erred when it determined that only the plant manager published the defamatory statements. We agree. The Supreme Court of Ohio has noted:

" 'Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.' 3 Restatement of the Law 2d, Torts (1965), Section 577(1). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a.* Also, it is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. See *id.* at Comment *b.* Ohio law recognizes that publication of defamation consists in communicating it to a person or persons other than the person libeled." (Emphasis *sic.* ) *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 460, 613 N.E.2d 585, 587.

Thus, publication of the allegedly defamatory statements also occurred in this case when the director of security gave his oral report to the plant manager and when he directed the preparation of the memorandum with the allegedly defamatory statements and presented it to the plant manager for signature.

■ The next issue to address, therefore, is whether the record contains sufficient evidence to create a question of fact regarding whether the director of security acted with actual malice. If a question of fact does exist, summary judgment cannot be granted to BP Oil because the question must be presented to

a jury. *Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 248, 543 N.E.2d 1277, 1283. In the event that a jury determined that the director of security did act with actual malice, BP Oil can be held liable for damages suffered by appellant since in Ohio, a corporation can be held liable for defamation committed by one of its agents. See *Citizens' Gas & Elec. Co. v. Black* (1916), 95 Ohio St. 42, 115 N.E. 495, paragraph one of the syllabus.

After careful review of the record, we conclude that appellant has presented sufficient evidence to create a question of fact regarding whether the director of security acted with reckless disregard for the truth or falsity of statements he made about appellant when he reported to the plant manager that appellant had been identified as being involved in an illegal drug transaction on the refinery premises and when he directed the preparation of the memo which was signed by the plant manager and posted on the refinery premises. The question of fact exists because the director of security testified that he held a personal belief that appellant was involved in illegal drug activity. However, he also testified that the investigation never uncovered any proof that appellant had been involved in an illegal drug transaction aside from the statement of the cafeteria manager. The cafeteria manager never actually saw appellant give anything to the cashier. Furthermore, the cafeteria manager was relying on a statement that the "big guy" gave the drugs to the cashier and on her own belief that she knew who the cashier meant to identify when she said "big guy." The "drugs" were never seized or tested. Appellant denied any involvement in illegal drug activity, and a search of his personal truck failed to result in a discovery of any drugs. Only the trier of fact can make the final determination regarding whether these facts show that the director of security acted with reckless disregard of the truth or falsity of the allegedly defamatory statements, *i.e.*, that he had a "high degree of awareness of the probable falsity of the published statements." *Jacobs v. Frank,* 60 Ohio St.3d at 115, 573 N.E.2d at 613.

Accordingly, the trial court improperly granted summary judgment granted to BP Oil. Appellant's first assignment of error is not well taken in part and is well taken in part.

Appellant's second assignment of error is a contention that appellant was entitled to a partial summary judgment on the issue that the defamatory statements published in this case were libelous *per se*. This court has previously noted that "[o]ne way to demonstrate that a defamatory statement was actionable *per se* is to show that the statement, by the very meaning of the words used, tends to injure a person in the person's trade or profession." *Stresen–Reuter v. Hull, supra*. This court has also previously noted that when statements are libelous *per se*, damages and malice are presumed. *Fish v. Heatherdowns Country Club Assoc., Inc.* (June 7, 1991), Lucas App. No. L–90–072, unreported,

1991 WL 97324. However, "[t]he presumptions associated with libel *per se* are lost if the defendant has a qualified or conditional privilege," *Cramton v. Brock* (Mar. 23, 1992), Clinton App. No. CA91–05–011, unreported, 1992 WL 56765, and "malice is not presumed with regard to the determination of whether a qualified privilege has been exceeded." *Fish, supra.* As we previously noted, a question of fact remains regarding whether actual malice exists in this case to defeat the qualified privilege claimed by BP Oil. Accordingly, the trial court did not err when it denied appellant's motion for partial summary judgment, because a material question of fact remains in dispute that must be determined before a ruling can be made as a matter of law that the qualified privilege has been exceeded. Appellant's second assignment of error is not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded for further proceedings consistent with this decision. Appellant and appellee BP Oil are each ordered to pay one half the court costs of this appeal.

*Judgment accordingly.*

ABOOD, P.J., HANDWORK and SHERCK, JJ., concur.