[Cite as *Reister v. Gardner*, 2019-Ohio-4720.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


JOHN J. REISTER, RECEIVER ON
BEHALF OF CERTIFIED STEEL STUD
ASSOCIATION, INC.,

    Appellant and Cross-Appellee,

    - vs -

WILLIAM A. GARDNER,

    Appellee and Cross-Appellant,

    - and -

EDWARD R. SLISH,

    Appellee,

    - vs -

CLARKWESTERN DIETRICH BUILDING
SYSTEMS, LLC dba CLARKDIETRICH,

    Appellant and Cross-Appellee,

    - vs -

CERTIFIED STEEL STUD
ASSOCIATION, INC.,

    Intervenor-Plaintiff.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NOS. CA2019-01-010
              CA2019-01-011
              CA2019-01-020

O P I N I O N
11/18/2019

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2018-02-0442

Millikin & Fitton Law Firm, Steven A. Tooman, Heather Sanderson Lewis, 9032 Union Centre Boulevard, Suite 200, West Chester, Ohio 45069; Helmer, Martins, Rice & Popham Co., L.P.A., James B. Helmer, Jr., Robert M. Rice, Jennifer L. Lambert, B. Nathaniel Garrett, for appellant and cross-appellee, John J. Reister, Receiver

Taft, Stettinius & Hollister LLP, Daniel R. Warncke, Aaron M. Herzig, Donnell J. Bell, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202; Fox Rothschild LLP, Jeffrey M. Pollock, Robert J. Rohrberger, Allison L. Hollows, 997 Lenox Drive, Lawrenceville, New Jersey, 08648, for appellee and cross-appellant, William A. Gardner

Dinsmore & Shohl LLP, Peter J. Georgiton, Justin M. Burns, 191 W. Nationwide Boulevard, Suite 300, Columbus, Ohio 43215; Chamberlain Hrdlicka White Williams & Aughtry, Scott M. Ratchick, John C. Guin, 191 Peachtree Street, NE, 46th Floor, Atlanta, Georgia 30303, for appellee, Edward R. Slish

Frost Brown Todd LLC, Matthew C. Blickensderfer, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202; Cohen & Grigsby, P.C., Anthony Cillo, Fridrikh V. Shrayber, 625 Liberty Avenue, Pittsburgh, Pennsylvania, 15222, for appellant and cross-appellee, Clarkwestern Dietrich Building Systems LLC

Faruki Ireland Cox Rhinehart & Dusing PLL, D. Jeffrey Ireland, Stephen A. Weigand, Jason W. Palmer, 201 East Fifth Street, Suite 1420, Cincinnati, Ohio 45202, for Intervenor-Plaintiff, Certifed Steel Stud Association, Inc.

**RINGLAND, P.J.**

{¶ 1} Appellants, Clarkwestern Dietrich Building Systems LLC, DBA ClarkDietrich, and John Reister ("the Receiver"), appeal the decision of the Butler County Court of Common Pleas, granting judgment on the pleadings in favor of certain members of the board of directors for the Certified Steel Stud Association, Inc., ("the Association").[1] For the

---

1. Henri Jung, the director associated with Phillips Manufacturing was initially named a party to this action and subsequent appeal. However, all claims against Jung have since been settled or otherwise resolved. *Reister v. Gardner*, 12th Dist. Butler No. CA2019-01-010 (Entry Granting Motion to Dismiss Against Appellee Henri Jung) (August 15, 2019). As such, we have removed reference to the assignments of error relating to Jung.

reasons detailed below, we affirm.

{¶ 2}   The underlying issues in this appeal have previously been before this court. *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn., Inc.*, 12th Dist. Butler No. CA2016-06-113, 2017-Ohio-2713; *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn., Inc.*, 12th Dist. Butler No. CA2017-04-040, 2017-Ohio-8129.[2]

{¶ 3}   The Association is a nonprofit corporation and trade association in the steel stud industry organized under Delaware law.  The founding members of the Association, who were also codefendants in the underlying action, are Marino/Ware Industries, Inc. ("Ware"), California Expanded Metal Products Company ("CEMCO"), and Telling Industries, LLC ("Telling").

{¶ 4}   At the time of the events giving rise to the underlying action, the Association's Board was comprised of one employee from each of its founding corporate members, as well as a fourth director from a fourth Corporation that joined the Association after its founding, Phillips Manufacturing ("Phillips").

{¶ 5}   In pertinent part, appellees William Gardner and Edward Slish were members of the Association's Board at all times relevant to this action.  According to the complaint in the underlying matter, the Association released a publication allegedly making derogatory assertions that ClarkDietrich's products did not comply with various codes and regulations. This publication was disseminated by the Association to 9,560 customers and others involved in the nonstructural steel framing industry.  After the publication was distributed, ClarkDietrich alleged that it lost projects and millions of dollars in revenue.

---

2. Another appeal involving the Ohio Valentine Act is not directly relevant to the instant appeal involving the jury verdict.  *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn., Inc.*, 12th Dist. Butler No. CA2016-05-098, 2017-Ohio-1091.

{¶ 6} ClarkDietrich brought claims against the Association for violation of the Ohio Deceptive Trade Practices Act, unfair competition, disparagement, defamation, and civil conspiracy. ClarkDietrich asserted these claims against the Association, and three other defendants who were later dismissed.

{¶ 7} On September 15, 2015, the matter proceeded to an 11-week jury trial. On the eve of closing, ClarkDietrich offered to dismiss its claims against the Association with prejudice. The Association refused the settlement offer. Next, ClarkDietrich filed a motion to dismiss its claims against the Association with prejudice, pursuant to Civ.R. 41(A)(2), which the Association opposed. The trial court denied ClarkDietrich's motion to dismiss and the matter proceeded to closing argument.

{¶ 8} On November 16, 2015, the jury returned a unanimous verdict in favor of ClarkDietrich, awarding the company $49.5 million, $43 million of which was apportioned to the Association. The trial court subsequently entered a judgment against the Association in the amount of $43 million.

{¶ 9} The Association stipulated it has insufficient tangible assets to satisfy the judgment. ClarkDietrich filed a motion for assignment of the Association's possible breach of fiduciary duty claim against its officers, directors, and agents, based on their decision to decline ClarkDietrich's offer to dismiss by stipulation, oppose ClarkDietrich's motion to dismiss, and proceed with the case through the jury determination. The trial court held a hearing on the matter and, at the suggestion of the trial court, ClarkDietrich withdrew its motion for assignment and filed a motion for the appointment of a receiver.

{¶ 10} On March 29, 2017, over the Association's objection, the trial court appointed a receiver "to investigate and, if he determines it to be appropriate, bring, prosecute, and manage claims against [the Association's] officers, directors and agents arising from the

- 4 -

decisions to reject ClarkDietrich's settlement offer and oppose ClarkDietrich's motion to dismiss."

{¶ 11} The instant appeal involves the action for damages and declaratory judgment brought by the Receiver on behalf of the Association against the individual directors Gardner and Slish.[3] The Receiver alleges Gardner and Slish breached their fiduciary duties to the Association causing the Association to lose a $43 million jury verdict. Reister claims that by either accepting the offer to dismiss or by not opposing the motion to dismiss, Gardner and Slish would have eliminated any chance that the Association would lose, thereby ensuring that the Association would be insulated from further litigation on the same claims. In rejecting the offer and opposing the motion to dismiss, the Receiver claims Gardner and Slish caused the Association professional and financial ruin.

{¶ 12} In Count One of his complaint, the Receiver sought damages against Gardner and Slish for breach of fiduciary duties arising from their roles as directors of the Association. In Count Two, the Receiver sought declaratory judgment to prevent Gardner and Slish from claiming the protections of the business judgment rule.

{¶ 13} Gardner and Slish moved to dismiss, or in the alternative, for judgment on the pleadings. Both Gardner and Slish argued that the litigation privilege rule and the business judgment rule shield them from any liability. The Receiver opposed the motions, arguing that any privilege related to the underlying proceedings applied only to "defamatory comments" made before or during judicial proceedings and did not shield them from their obligations as directors to protect the corporation.

{¶ 14} In its judgment entry, the trial court found that both Gardner and Slish were

---

3. ClarkDietrich was designated an interested party and is participating in this appeal.

protected from liability by application of the litigation privilege doctrine and granted their motions for judgment on the pleadings. In so doing, the trial court found "even when assuming the facts in the complaint to be true, and drawing all reasonable inferences in favor of the Receiver, as the court must, [Gardner and Slish] are entitled to judgment as a matter of law." Finally, the trial court dismissed Gardner and Slish's counterclaims seeking indemnification from the Association for the expenses incurred in defending this action. The Receiver and ClarkDietrich appealed the trial court's decision, raising two assignments of error. Subsequently, Gardner filed a cross-appeal, raising two cross-assignments of error.

{¶ 15} The Receiver's Assignment of Error:

{¶ 16} THE TRIAL COURT ERRED BY GRANTING JUDGMENT ON THE PLEADINGS FOR DIRECTORS GARDNER AND SLISH.

{¶ 17} ClarkDietrich's Assignment of Error:

{¶ 18} THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT SLISH'S AND DEFENDANT GARDNER'S MOTIONS FOR JUDGMENT ON THE PLEADINGS.

{¶ 19} The Receiver and ClarkDietrich both argue the trial court erred in granting judgment on the pleadings in favor of Gardner and Slish. Based on our review of the record, we find both Gardner and Slish are shielded from liability in this action due to operation of the litigation privilege doctrine and therefore the trial court appropriately granted judgment on the pleadings.

{¶ 20} A trial court's decision on a Civ.R. 12(C) motion for judgment on the pleadings is reviewed by an appellate court de novo. *Whitehead v. Skillman Corp.*, 12th Dist. Butler No. CA2014-03-061, 2014-Ohio-4893, ¶ 7. Pursuant to Civ.R. 12(C), a judgment on the pleadings is appropriate if the court finds that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. In ruling on the Civ.R. 12(C) motion, the court

construes as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. *Shaw v. Aberdeen*, 12th Dist. Brown No. CA2016-06-012, 2016-Ohio-8229, ¶ 11. Civ.R. 12(C) motions are specifically for resolving questions of law. *Whitehead* at ¶ 7. "The determination of a motion for judgment on the pleadings is limited solely to the allegations in the pleadings and any writings attached to the pleadings." *Golden v. Milford Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-Ohio-3418, ¶ 6.

{¶ 21} A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears. *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), syllabus; *Hecht v. Levin*, 66 Ohio St.3d 458, 461 (1993). This absolute privilege applies whether or not the purportedly defamed party was a party to the underlying action.[4] *Surace* at 234; *Krakora v. Gold*, 7th Dist. Mahoning No. 98 CA 141, 1999 Ohio App. LEXIS 4699, at *6 (Sep. 28, 1999) ("An absolute privilege applies to allegations referring to parties and non-parties alike.") Although the Ohio Supreme Court recognized that the rule could cause some hardship to a defamed party, the court reasoned that "the cogent public policy of guaranteeing the free flow of information in a judicial proceeding outweighed the hardship" to an aggrieved party. *Hecht* at 461.

{¶ 22} The genesis of the *Surace* case involved a civil racketeering case. *Surace* at 229. The plaintiff, Daniel Dzinga, and his attorney, William Wuliger, filed a complaint in federal court predicated on the Racketeer Influenced and Corrupt Organizations Act

---

4. The dissent attempts to challenge the soundness of *Surace* as binding precedent because of its age. Yet withstanding the test of time does more to credit *Surace*'s soundness than discredit it. Until the Ohio Supreme Court states otherwise, we follow its lead as stated in *Surace.*

("RICO"). *Id.* The complaint alleged that several of the named defendants had attempted to reduce competition in the refuse disposal business by operating their companies through a pattern of racketeering activity. *Id.* Though Joseph Surace was not a party to that action, with respect to the RICO portion of the action, the complaint alleged:

> In 1975 or 1976, defendant James Palladino, who was already operating defendant Ohio Bulk, gathered together certain investors to form defendant Inland and purchase and operate a sanitary landfill located in 6705 Richmond Road, Glenwillow, Ohio. Said investors included defendant James Palladino himself, defendants Harry Fedele, and Albert Seymour. Also said investors included such known underworld figures as Danny Greene, Joseph Surace, John Nardi, Harvey Reiger and Frank Embrecia.

*Id.* at 229-230. Subsequently, Surace filed a complaint against Dzina and Wuliger, alleging that the abovementioned pleading in the RICO action was libelous, false and malicious, and its import was neither relevant nor pertinent to the RICO action. *Id.* at 230.

{¶ 23} The trial court granted a motion to dismiss on the basis that the alleged defamatory pleading was absolutely privileged. *Id.* The court of appeals reversed after applying an "alternative remedies" theory, concluding that Surace's complaint was actionable because there was no alternative remedy to clear his name in the RICO action since he was not a party. *Id.* The Ohio Supreme Court then reversed the court of appeals and reinstated the trial court's order of dismissal. *Id.* In so doing, the Court specifically rejected the argument that absolute privilege only applies to parties in a litigation. *Id.* at 943. Rather, the Court held "as a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Id.* at 942-943.

{¶ 24} While the privilege historically was raised to defeat defamation claims, the modern version has broadened in most states to include multiple tort claims. *See Nationstar Mtge., L.L.C. v. Ritter*, 10th Dist. Franklin Nos. 14AP-1000 and 14AP-1002, 2015-Ohio-3900, ¶ 15 (privilege applied to claims of fraud, slander, and intentional infliction of emotional distress). The federal 11th Circuit stated that "'[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior * * * so long as the act has some relation to the proceeding.'" *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004), quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606, 608 (Fla.1994). This is consistent with Ohio law, which provides that litigation privilege operates to protect both actions and statements made in the course of a judicial proceeding that "bears some reasonable relation to the judicial proceeding in which it appears." *See Surace* at 233; *Mootispaw v. Kiger*, 12th Dist. Fayette Case No. CA96-11-025, 1997 Ohio App. LEXIS 1461, at *3 (Apr. 14, 1997) ("There is an absolute privilege or immunity for statements made in a judicial proceeding that extends to every step in the proceeding, from beginning to end.") Other Ohio courts have expanded the litigation privilege to apply to statements made in quasi-judicial proceedings and to testimony provided during disciplinary hearings. *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043, ¶ 20-21 (student judicial proceedings).

{¶ 25} The rationale for providing immunity to "actions" as opposed to merely "statements" is consistent with the purposes of the litigation privilege rule. "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit

without fear of having to defend their actions in a subsequent civil action for misconduct." *Jackson* at 1274, quoting *Levin* at 608. *See Opperman v. Klosterman Equip. L.L.C.*, 3d Dist. Mercer No. 10-14-09, 2015-Ohio-4621, ¶ 75 ("privilege is necessary to protect litigants and potential litigants from the possibility of a flood of defamation suits").

{¶ 26} Although we are aware of no decision in this state where the privilege has been applied to a corporate board of directors for actions taken in the negotiation of ongoing, protracted litigation as is the case here, we note that other state and federal courts have applied similar litigation privileges to settlement activities. *See, e.g., Jackson* at 1275, citing *Petty v. Gen. Accident Fire & Life Assurance Corp.*, 365 F.2d 419, 421 (3d Cir.1966) (negotiation of a settlement is a part of a judicial proceeding); *Arochem Internatl., Inc. v. Buirkle*, 968 F.2d 266, 271-72 (2d Cir.1992) (statements made to encourage settlement of litigation absolutely privileged under California's litigation privilege).

{¶ 27} Since this matter is before this court following judgment on the pleadings, we are necessarily limited to the allegations set forth in the pleadings. *Golden*, 2009-Ohio-3418 at ¶ 6. *See* Civ.R. 7(A) (Pleadings); Civ. R. 12(C) (Motion for Judgment on the Pleadings). Nevertheless, following review, we find that judgment on the pleadings is appropriate in this case because the Receiver and ClarkDietrich can prove no set of facts in support of their claim that would entitle them to relief. The actions taken and statements made by Gardner and Slish in the underlying matter are protected and provided immunity under the litigation privilege rule.

{¶ 28} In the present case, it is undisputed that the claims against Gardner and Slish arise entirely from their decision as directors of the Association to reject ClarkDietrich's settlement offer and oppose ClarkDietrich's motion to dismiss. According to the Receiver's complaint, Slish and Gardner "breached their fiduciary duty to [the Association] when they

unanimously decided: (1) to reject an offer by the plaintiff ClarkDietrich near the end of trial by which all claims brought against [the Association] would be dismissed with prejudice and no costs would be owed by [the Association]; and (2) to oppose a subsequent motion by plaintiff ClarkDietrich to dismiss the claims against [the Association] with prejudice and without payment of costs."  The complaint alleges that had the directors accepted the offer or motion to dismiss, the directors would have "eliminated any chance that [the Association] would lose" and "ensured that [the Association] could declare victory and be insulated from further litigation."

{¶ 29} Though the Receiver claims that the Gardner and Slish's actions resulted in the $43 million verdict against the Association, we find it contrary to the purposes of the litigation privilege rule to second-guess the litigation strategy employed by the directors and the Association's counsel.  Gardner and Slish cannot be held liable for actions and statements in the prior case that are "reasonably related to the proceeding in which it appears."  *Hecht*, 66 Ohio St.3d at 460.  Consistent with the purposes of the litigation privilege rule, directors Slish and Gardner should be free to use their best judgment in defending the underlying lawsuit without fear of having to defend their action in a subsequent civil action for those decision.  As a result, the trial court appropriately granted judgment on the pleadings to Gardner and Slish.  Therefore, we find the assignments of error raised by the Receiver and ClarkDeitrich are without merit and hereby overruled.

{¶ 30} Gardner's Cross-Assignment of Error No. 1:

{¶ 31} THE TRIAL COURT ERRED IN DISMISSING GARDNER AND SLISH'S COUNTERCLAIMS.

{¶ 32} In his first cross-assignment of error, Gardner argues the trial court erred by denying his request for indemnification from the Association for his expenses in defending

this action.[5]  However, as correctly found by the trial court, the parties stipulated to Delaware law controlling substantive questions of law while Ohio law would apply "elsewhere, including application of the * * * litigation privilege."  Pursuant to 8 Del.Code Ann., 145(c):

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action * * * such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

The Court of Chancery is vested with "exclusive jurisdiction" to hear and determine such an action.  8 Del.Code Ann., 145(k).  Thus jurisdiction for this issue is in the Delaware Court of Chancery.  Moreover, the Receiver was appointed for the limited purposes under R.C. 2732.01 "to investigate and, if he determines it to be appropriate, bring, prosecute, and manage claims against [the Association's] officers, directors and agents arising from the decisions to reject ClarkDietrich's settlement offer and oppose ClarkDietrich's motion to dismiss."  Under those terms, the Receiver's appointment was premised on limited authority, none of which involves the authorization to pay indemnification claims.  As a result, Gardner's first cross-assignment of error is without merit.

{¶ 33} Gardner Cross-Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED IN DENYING GARDNER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

{¶ 35} In his second assignment of error, Gardner argues the trial court erred by denying his motion to dismiss for lack of personal jurisdiction.  As noted by the Ohio Supreme Court, "[a]bsent a patent and unambiguous lack of jurisdiction, a post-judgment appeal from a decision overruling a motion to dismiss for lack of personal jurisdiction will

---

5. Slish is not involved in the cross-appeal.

provide an adequate legal remedy[.]" *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 591 (2001); *Jones v. Gori*, 12th Dist. Warren No. CA2018-07-068, 2018-Ohio-4655, ¶ 6. However, as noted above, the trial court did not grant judgment in favor of Reister or ClarkDietrich. Instead, the trial court granted Gardner and Slish's judgment on the pleadings based on the litigation privilege rule. This court affirmed the trial court's decision in resolution of Reister and ClarkDietrich's assignments of error. As a result, we now find Gardner's second cross-assignment of error with respect to personal jurisdiction is moot.

{¶ 36} Judgment affirmed.

PIPER, J., concurs.

S. POWELL, J., dissents.


**S.POWELL, J., dissenting.**

{¶ 37} Citing to the Ohio Supreme Court's statement in *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), that the absolute privilege afforded to a defendant by the litigation privilege rule "applies to allegations referring to parties and non-parties alike," the majority has taken a now three-decade old blanket statement of law that established an absolute privilege only as to defamatory statements in litigation to extend the litigation privilege rule beyond its originally intended scope. Contrary to the majority's holding, and as explained more fully below, I believe the scope of the litigation privilege should return to its roots and provide a defendant with immunity only where the lawsuit is brought by the defendant's party opponent in the underlying action giving rise to the suit. Therefore, because the majority's decision in this case has now stretched the privilege to a point where litigants are conceivably free to engage in any form of tortious conduct so long as the conduct occurred in a judicial or quasi-judicial proceeding, I must dissent.

- 13 -

{¶ 38} "The doctrine of absolute privilege is a form of immunity." *Lacey v. Ohio Auditor of State*, 10th Dist. Franklin No. 19AP-110, 2019-Ohio-4266, ¶ 15, citing *Marcum v. Rice*, 10th Dist. Franklin No. 98AP-717, 1998 Ohio App. LEXIS 5385 (Nov. 3, 1998). To that end, it is now well established in Ohio that "[a] statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." *Hecht v. Levin*, 66 Ohio St.3d 458, 460, citing *Surace,* 25 Ohio St.3d at syllabus. It is equally well established that the privilege also applies to "statements" and "actions" in "quasi-judicial proceedings" such as "when university officials reported alleged illegal conduct of a student, when a bank reported alleged illegal conduct of an employee, and when an individual reported alleged illegal conduct of another individual." *Lacey* at ¶ 16, citing *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043; *Lee v. Upper Arlington*, 10th Dist. Franklin No. 03AP-132, 2003-Ohio-7157; and *Haller v. Borror*, 10th Dist. Franklin No. 95APE01-16, 1995 Ohio App. LEXIS 3312 (Aug. 8, 1995). This privilege extends to "'every step in the proceeding, from beginning to end.'" *Mootispaw v. Kiger*, 12th Dist. Fayette No. CA96-11-025, 1997 Ohio App. LEXIS 1461, *3 (Apr. 14, 1997), quoting *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 506 (1994).

{¶ 39} I agree with the majority's decision finding the litigation privilege rule should apply to both "statements" and "actions" made in judicial and quasi-judicial proceedings. However, as noted above, I believe the majority has now expanded the privilege beyond its originally intended scope that established an absolute privilege only as to defamatory statements in litigation by providing litigants with a safe haven to engage in tortious conduct against third parties that would otherwise be actionable had that conduct occurred anywhere other than in a judicial or quasi-judicial proceeding. Therefore, contrary to the

majority's holding in this case, I believe the privilege should not be applied to provide a defendant with immunity for the defendant's "statements" or "actions" made in a judicial or quasi-judicial proceeding brought in a lawsuit by anyone other than the defendant's party opponent in the underlying suit. Or, as it applies to the facts of this case, the litigation privilege rule should not apply to absolve a director serving on a party corporation's board of directors from liability for an alleged breach of a fiduciary duty to that party corporation as a matter of law.

{¶ 40} I reach this decision notwithstanding the Ohio Supreme Court's now three-decade-old statement in *Surace* that the absolute privilege afforded to a defendant by the litigation privilege rule "applies to allegations referring to parties and non-parties alike[.]" In *Surace*, unlike in this case, the Ohio Supreme Court was addressing only whether the litigation privilege rule should apply to both parties and non-parties where a "defamatory statement was made in a written pleading[.]" Therefore, because the Ohio Supreme Court's decision in *Surace* addressed only whether the litigation privilege rule applied equally to all parties and nonparties where a defamatory statement was made as part of a written pleading, I disagree with the majority's assertion that *Surace* stands for the proposition that the absolute privilege applies to all parties and nonparties under any and all circumstances as a matter of law. This is particularly true as it relates to claims where, as here, a director serving on a party corporation's board of directors is alleged to have breached his or her fiduciary duty to that party corporation. Accordingly, because the Ohio Supreme Court's decision in *Surace* addressed a wholly separate issue than what is at issue here, the Ohio Supreme Court's decision in *Surace* is distinguishable from the case at bar and holds significantly less precedential value than what the majority suggests.

{¶ 41} "A claim of a breach of fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 27. A claim alleging a breach of a fiduciary duty is one of the only causes of action that a corporation may levy against its board of directors to hold the board accountable for their individual or collective negligence. Stripping a corporation of that right through the application of the litigation privilege rule severely limits (if not outright negates) a corporation's ability to hold its board of directors accountable for that breach. This was clearly not the intent behind the litigation privilege rule. Rather, as noted by the majority, the original intent behind the privilege rule was to advance the "cogent public policy of guaranteeing the free flow of information in a judicial [or quasi-judicial] proceeding[.]" *Hecht*, 66 Ohio St.3d at 461. This guarantee can be satisfied without the need to limit the recourse available to an aggrieved party who was otherwise not involved in the underlying judicial or quasi-judicial proceeding where the tortious conduct occurred. This holds true even in cases where the director's conduct resulted in a less egregious and financially disastrous decision than was made by Gardner and Slish in this case. That is to say the litigation privilege rule is not, and never has been, an all-encompassing privilege that the majority asserts.

{¶ 42} In light of the foregoing, unless and until the Ohio Supreme Court holds otherwise, I must dissent from the majority's decision. I believe the absolute privilege afforded to a defamation suit defendant by the litigation privilege rule should be limited to defamatory statements or actions made in the course of the initial litigation. And further limited to just the parties of that initial litigation. Therefore, because I believe the majority has now expanded the privilege beyond its originally intended scope that established an absolute privilege only as to defamatory statements in litigation to now provide immunity to

a director on a corporation's board of directors for a breach of a fiduciary duty that would have been actionable had the breach occurred anywhere other than in a judicial or quasi-judicial proceeding, I would reverse and remand the trial court's decision finding the litigation privilege rule shields Gardner and Slish from liability as a matter of law.