[Cite as *Newman v. Univ. of Dayton*, 2021-Ohio-1609.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| PETER K. NEWMAN | : | |
| | : | Appellate Case No. 28815 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2019-CV-515 |
| v. | : | |
| | : | (Civil Appeal from |
| UNIVERSITY OF DAYTON, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of May, 2021.

. . . . . . . . . . .

PETER K. NEWMAN, 594 Garden Road, Dayton, Ohio 45419
        Plaintiff-Appellant, Pro Se

DANIEL G. ROSENTHAL, Atty. Reg. No. 0010119, 201 East Fifth Street, 26th Floor,
Cincinnati, Ohio 45202 and GRETCHEN M. TREHERNE, Atty. Reg. No. 0074376, 8534
Yankee Street, Suite E, Centerville, Ohio 45458
        Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Peter K. Newman appeals from three trial court judgments regarding his claims against the University of Dayton ("UD") and related individual defendants: (1) the trial court's dismissal of Newman's claims against attorney Karen T. Dunlevey and the law firm of Jackson Lewis, P.C.; (2) the trial court's entry of judgment in favor of UD and all UD employees named as defendants; and (3) the trial court's denial of Newman's motion to disqualify Dunlevey and Jackson Lewis from representing UD in this matter. The judgments of the trial court will be affirmed.

## Factual and Procedural Background

{¶ 2} From approximately 2014 to 2016, Newman, an attorney, was employed as an adjunct professor at UD, teaching primarily in the School of Business Administration ("SBA"). In September 2016, after a female African-American law student[1] allegedly challenged Newman about certain course requirements in a summer 2016 class at UD's law school, Newman, who is male and white, filed an internal complaint against that student for discrimination and harassment. Dissatisfied with UD's handling of that complaint, Newman later filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (*See* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 22.)

{¶ 3} Shortly after the EEOC dismissed that charge (*see id.*, Exh. 23), Newman filed a series of retaliation charges with the Ohio Civil Rights Commission ("OCRC"),

---

[1] Newman's original federal complaint identified that law student by name and designated her as a defendant (*see* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 1, ¶ 3, 26 (*Newman I*)); his subsequent complaints identified the same individual but did not name her as a defendant. (*Id.*, Exh. 16, ¶ 8 (*Newman II*) and 1/31/19 Complaint, ¶ 18 (*Newman III*)).

which the OCRC dismissed both initially and on Newman's motion for reconsideration. (*See id.*, Exhs. 24-29.)

{¶ 4} Purportedly unaware of Newman's dispute with the law student, the SBA in October 2016 notified Newman that his contract as an adjunct professor would not be renewed for the spring 2017 semester. Newman then filed a complaint in federal court, naming as defendants UD, multiple UD employees, and the law student with whom he had the indicated conflict, and setting forth claims for alleged violations of Title VII, Title IX, the Age Discrimination in Employment Act, Ohio's discrimination statutes, and related tort and contract claims. *Newman v. Univ. of Dayton*, S.D.Ohio No. 3:17-cv-179 (May 19, 2017 Complaint) ("*Newman I*"). (*See* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 1.) The federal trial court dismissed[2] Newman's complaint on the basis of judicial estoppel, finding that Newman improperly failed to disclose his UD employment and earnings or his claims against the University and its employees in a then-pending personal bankruptcy action filed on behalf of Newman and his wife.[3] *Newman*, S.D.Ohio No. 3:17-cv-179, 2017 WL 4919224 (Oct. 31, 2017).

{¶ 5} On Newman's appeal from that judgment, the Sixth Circuit Court of Appeals affirmed. *Newman v. Univ. of Dayton*, 751 Fed.Appx. 809 (6th Cir.2018). The federal

---

[2] The defendants initially moved to dismiss the *Newman I* complaint under Fed.R.Civ.P. 12(b)(6) (*see* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 2), but the trial court, at Newman's request, converted that motion to one for summary judgment under Fed.R.Civ.P. 56. (*See id.*, Exh. 5, p. 1-2.) Nevertheless, the relevant judgment entry "GRANTS the Motion to Dismiss." (*Id.*, Exh. 6.)

[3] *See In re Newman*, S.D.Ohio No. 3:14-BK-33622.

appellate court also denied Newman's subsequent petition for rehearing en banc. (*See* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 14.)

{¶ 6} While that federal appeal remained pending, Newman filed a second federal action against UD arising from the same operative facts. *Newman v. Univ. of Dayton*, S.D. Ohio No. 3:18-cv-252 (Jul. 25, 2018 Complaint) ("*Newman II*"). (*See* 3/25/19 Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Exh. 16.) The second lawsuit included causes of action identical to four asserted against UD in *Newman I*,[4] but also asserted new claims against Dunlevey and Jackson Lewis, UD's attorneys.

{¶ 7} On January 29, 2019, a federal magistrate judge recommended that Newman's second complaint be dismissed for failure to prosecute. (*See id.*, Exh. 19.) Two days later, Newman moved to voluntarily dismiss his *Newman II* complaint without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(A). (*Id.*, Exh. 20.) On February 4, 2019, the district judge adopted the magistrate judge's report and recommendation and dismissed *Newman II* without prejudice. (*Id.*, Exh. 21.)[5]

{¶ 8} In apparent anticipation of that dismissal, Newman filed the current action in the Montgomery County Court of Common Pleas on January 31, 2019 ("*Newman III*"). Again referencing the termination of his employment after he brought discrimination and harassment charges against a female African-American law student, Newman named as

---

[4] *Newman I*'s claims against UD employees and the UD law student were omitted from the *Newman II* complaint.

[5] The "without prejudice" nature of that dismissal deprives it of any res judicata effect for purposes of our analysis that follows.

defendants UD, numerous UD employees,[6] and UD's outside counsel, Dunlevey and Jackson Lewis. The complaint set forth claims against all defendants for aiding and abetting discrimination in violation of R.C. 4112.02(J)[7] (Second Cause of Action), and against UD only for retaliatory harassment in violation of R.C. 4112.02(I)[8] (First Cause of Action), breach of an implied contract (Third Cause of Action), wrongful discharge in violation of public policy (Fourth Cause of Action), and misrepresentation and fraud (Fifth Cause of Action). The claims against Dunlevey and Jackson Lewis were premised on conduct attributed to Dunlevey and alleged to have occurred after *Newman I* was filed. Some allegations targeted Dunlevey's purported conduct related to the original federal court action and before the OCRC; others related to her purported permanent extension to the entire UD campus of the UD law school dean's order banning Newman from law school property, and her supposedly conflicting explanations for that ban. (*See* 1/31/19 Complaint, ¶ 27, 30-31, 35-36, 44.)

{¶ 9} On March 4, 2019, Defendants Dunlevey and Jackson Lewis moved pursuant to Civ.R. 12(B)(6) to dismiss Newman's claims against them on the basis of judicial privilege. They urged that the actions on which their liability supposedly was

---

[6] Those UD employees are identified as President Eric F. Spina; Associate Provost for Faculty Carolyn Phelps; Associate Vice President for Student Development, Dean of Students, and Deputy Title IX Coordinator Christine Schramm; Civil Rights Investigator/ Deputy Title IX Coordinator Kimberly Bakota; Title XI/Section 504 Coordinator Amy Zavadil; former Associate Dean of SBA Terence Lau; Associate Professor and Chair of SBA Department of Management and Marketing Jay Janney; Professor and former SBA Interim Dean E. James Dunne; School of Law Dean Andrew L. Strauss; Vice President and General Counsel Mary Ann Recker; and Associate University Counsel/Affirmative Action Officer Patricia Bernal.

[7] Newman's complaint actually refers, presumably erroneously, to "R.C. 4112.92(J)."

[8] Newman's complaint actually refers, presumably erroneously, to "R.C. 4112 (a)(I)."

premised all were undertaken by Dunlevey during the course of representing the UD defendants in judicial or quasi-judicial proceedings, and thus were absolutely privileged.

{¶ 10} On March 25, 2019, UD and its named employees, represented by a different attorney from the Jackson Lewis firm, moved for judgment on the pleadings and/or for summary judgment pursuant to Civ.R. 12(C) and/or Civ.R. 56(C), arguing that Newman's claims against them were barred by the doctrines of res judicata and judicial privilege. In support, they cited the federal court's entry of dismissal in *Newman I* and offered the same judicial privilege argument advanced by Dunlevey and Jackson Lewis in their own motion to dismiss.

{¶ 11} On March 11, 2019, Newman filed a motion to disqualify Dunlevey and Jackson Lewis from representing the other defendants herein. Newman argued that Dunlevey's status as a defendant expected to testify as a fact witness created conflicts of interest that rendered both her and her law firm unable to act as counsel for the UD defendants.

{¶ 12} On May 19, 2020, the trial court entered separate judgments on the three pending motions described above. One judgment granted Jackson Lewis and Dunlevey's motion to dismiss the claims against them; one granted the UD defendants' motion for judgment on the pleadings and/or motion for summary judgment; and one denied Newman's motion to disqualify counsel.

{¶ 13} Newman timely filed this appeal from all three of those judgments, setting forth these three assignments of error:

> #1: The trial erred in granting Defendants Karen Dunlevey and Jackson Lewis's motion to dismiss.

#2: The trial court also erred in granting the University Defendants' motion for judgment on the pleadings and/or for summary judgment.

#3: The trial court should have granted Plaintiff's motion to disqualify counsel.

{¶ 14} We will address those assignments of error in the order that best facilitates our analysis.

**Preliminary Issue – Newman's "Vexatious Litigator" Status**

{¶ 15} After this appeal was filed, but before the date scheduled for oral arguments to this Court, the Montgomery County Court of Common Pleas entered an order declaring Newman "a vexatious litigator, pursuant to R.C. 2323.52." *See Univ. of Dayton v. Newman*, Montgomery C.P. No. 2020-CV-2221 (Sept. 3, 2020). The relevant statute provides that a person subject to a vexatious litigator order "may not * * * continue any legal proceedings that the vexatious litigator had instituted in a court of appeals prior to entry of the order, or make any application, other than the application for leave to proceed allowed by division (F)(2) of this section, in any legal proceedings instituted by the vexatious litigator or another person in a court of appeals without first obtaining leave of the court of appeals to proceed pursuant to division (F)(2) of this section." R.C. 2323.52(D)(3).

{¶ 16} In pertinent part, R.C. 2323.52(F)(2) provides:

A person who is subject to an order entered pursuant to division (D)(1) of this section and who seeks to institute or continue any legal proceedings in a court of appeals or to make an application, other than an application for leave to proceed under division (F)(2) of this section, in any legal

proceedings in a court of appeals shall file an application for leave to proceed in the court of appeals in which the legal proceedings would be instituted or are pending. The court of appeals shall not grant a person found to be a vexatious litigator leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of appeals unless the court of appeals is satisfied that the proceedings or application are not an abuse of process of the court and that there are reasonable grounds for the proceedings or application. * * *

{¶ 17} Although Newman failed to file an application for leave to proceed in this Court, he presented oral argument on September 29, 2020. Newman is cautioned, however, that any further proceedings in this matter would require an R.C. 2323.52(F)(2) application and this Court's granting leave to proceed.

**Assignment of Error #2 – Judgment Entry in Favor of University Defendants**

{¶ 18} In his second assignment of error, Newman contends that the trial court erred by granting the UD defendants' motion for judgment on the pleadings and/or for summary judgment. He maintains that those defendants did not sustain either the Civ.R. 56 burden to demonstrate res judicata claim preclusion or the Civ.R. 12(C) burden to demonstrate that certain acts by those defendants were protected by judicial privilege.

a. Standard of Review

{¶ 19} We review de novo a trial court's ruling on a motion for summary judgment. *Hill v. Mullins*, 2017-Ohio-1302, 88 N.E.3d 575, ¶ 12 (2d Dist.), citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. De novo review requires this court to use the same standard that the trial court should have used, and we

examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Id.,* citing *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 20} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 21} We likewise review de novo a trial court's decision on a motion for judgment on the pleadings, "because these motions present only questions of law." *Moyer v. Abbey Credit Union, Inc.,* 2d Dist. Montgomery No. 28759, 2020-Ohio-5410, ¶ 19. "[E]ntry of judgment pursuant to Civ.R. 12(C) is only appropriate 'where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds[,] beyond doubt, that the plaintiff could prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief.' " *Hester v. Dwivedi,* 89 Ohio St.3d 575, 577-78, 733 N.E.2d 1161 (2000),

citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

b. Analysis

i. *Res judicata*

{¶ 22} Applying "the general rules of claim preclusion," the trial court held that Newman "[wa]s barred from relitigating" against the UD defendants "not only those claims that were actually litigated in the prior federal action" (*Newman I*), "but any claim that could or should have been litigated [in that prior action] because it arose out of the same underlying transaction or occurrence." (5/19/20 Decision, Order, and Entry Granting Defendants' Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, p. 10.) On that basis, the trial court entered judgment against Newman as to all claims against the UD defendants that arose relative to the termination of his employment and that should have been known to exist at the time he filed his original federal action.

{¶ 23} The doctrine of res judicata encompasses two separate but related concepts: claim preclusion, also known as "estoppel by judgment," and issue preclusion, also known as "collateral estoppel." *Dorsey v. Dorsey*, 2d Dist. Montgomery No. 27338, 2017-Ohio-5826, ¶ 100, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). Through the concept of claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Dibert v. Carpenter*, 2018-Ohio-1054, 98 N.E.3d 350, ¶ 68 (2d Dist.), quoting *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140

(1998). To determine whether claim preclusion applies, a court should consider four factors: (1) whether there is a prior valid judgment on the merits; (2) whether the latter action involves the same parties, or their privies, as the prior action; (3) whether the latter action raises claims that were or could have been litigated in the prior action; and (4) whether both actions arose out of the same transaction or occurrence. *Wright v. Heller*, 2018-Ohio-149, 102 N.E.3d 1285, ¶ 22 (1st Dist.); *see also O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6.

**{¶ 24}** The trial court's res judicata decision in this case relied on a claim preclusion rationale. Having reviewed the record de novo, we conclude that the trial court did not err in holding that most of Newman's claims against the UD defendants were barred on that basis.

**{¶ 25}** A comparison of the five causes of action contained in the *Newman III* complaint to the claims previously set forth in *Newman I* reveals the following parallels:

| *Newman III* claims | *Newman I* claims |
|---|---|
| 1st Cause of Action – pattern or practice of retaliatory harassment in violation of R.C. 4112.02(I) | 1st Cause of Action – retaliation in violation of Title VII, Title IX, & Ohio Civil Rights Act [R.C. 4112]<br><br>8th Cause of Action, [9] ¶ 121-127 – harassment in violation of Title IX |
| Defendants: UD only | Defendants: UD + employees |
| | |
| 2nd Cause of Action – aiding & abetting discrimination in violation of R.C. 4112.12(J) | 4th Cause of Action – aiding & abetting discrimination in violation of R.C. 4112.12(J) |
| Defendants: UD + employees + Dunlevey | Defendants: UD + employees |

---

[9] The *Newman I* complaint has two "8th Cause of Action" headings; this is the earlier of those two.

| | |
|---|---|
| + Jackson Lewis | |
| | |
| 3rd Cause of Action – breach of implied contract | 9th Cause of Action,[10] ¶ 158-163 – breach of implied contract |
| Defendants: UD only | Defendants: UD only |
| | |
| 4th Cause of Action – wrongful discharge in violation of public policy | 1st Cause of Action – retaliation in violation of Title VII, Title IX, & Ohio Civil Rights Act (R.C. 4112) |
| Defendants: UD only | Defendants: UD + employees |
| | |
| 5th Cause of Action – misrepresentation & fraud | 10th Cause of Action, [11] ¶ 164-170– misrepresentation & fraud |
| Defendants: UD only | Defendants: UD only |

{¶ 26} In opposing the UD defendants' motion to dismiss in the trial court, Newman challenged only the first of the four elements that give rise to claim preclusion – i.e., he argued that the federal court's dismissal of *Newman I* "was not a judgment on the merits because the Court dismissed th[at] lawsuit based on the equitable estoppel doctrine."[12] (5/1/19 Memorandum in Opposition to the University Defendants' Motion for Judgment on the Pleadings and/or For Summary Judgment, p. 19.) On appeal, however, he concedes that "there is a prior valid judgment on the merits" and that the UD defendants thus "met the first element for claim preclusion." (Appellant's Brief, p. 21.) Instead, he now maintains that those defendants failed to establish the other three elements of claim

---

[10] The *Newman I* complaint has two "9th Cause of Action" headings; this is the latter of those two.

[11] The *Newman I* complaint has two "10th Cause of Action" headings; this is the latter of those two.

[12] In fact, the federal court's decision in *Newman I* actually was premised on the doctrine of *judicial* estoppel. *See Newman*, S.D.Ohio No. 3:17-cv-179, 2017 WL 4919224, at *4-8; *see also Newman*, 751 Fed.Appx. at 814-815.

preclusion. We disagree.

**{¶ 27}** Although Newman argues that the second claim preclusion element is not satisfied as to *Newman III* because Bernal, Dunlevey, and Jackson Lewis were not named as defendants in *Newman I*, claim preclusion does not require that all parties align identically. Rather, claim preclusion may apply if parties in the later action are "in privity with the parties in the first action." *Deaton v. Burney*, 107 Ohio App.3d 407, 411-12, 669 N.E.2d 1 (2d Dist.1995), citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943); see also *Wright*, 2018-Ohio-149, 102 N.E.3d 1285, at ¶ 22.

**{¶ 28}** This court has acknowledged that "privity is a somewhat amorphous concept in the context of claim preclusion." *Buckeye Retirement Co., L.L.C. v. Busch*, 2d Dist. Greene No. 2010-CA-51, 2011-Ohio-1125, ¶ 21, citing *Kirkhart v. Keiper,* 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8, and *Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000). Nevertheless, a "mutuality of interest, including an identity of desired result," may support a finding of privity. *Id.*, quoting *Brown* at 248.

**{¶ 29}** Here, although Bernal (UD's in-house counsel) was not named as a defendant in the original federal action, she undoubtedly shared the named defendants' interest in the dismissal of that action, and she would have been entitled to the benefit of judicial estoppel, which the federal court found precluded Newman's claims. Her position in that respect was indistinguishable from that of the other UD defendants. The second element of claim preclusion therefore was satisfied as to all UD defendants, including Bernal.

**{¶ 30}** As legal counsel representing UD and its employees in the *Newman I* litigation, Dunlevey and Jackson Lewis, too, shared a common interest with the UD

defendants in the outcome of that litigation. More importantly, however, the trial court applied claim preclusion only as a basis for granting judgment in favor of the UD defendants, not as to Dunlevey and Jackson Lewis, who sought dismissal on different grounds through a separate motion. For that reason, the trial court did not err in concluding that the addition of Dunlevey and Jackson Lewis as new defendants in *Newman III* did not preclude the application of claim preclusion to bar Newman's claims against the UD defendants alone.

{¶ 31} Turning to the third element of claim preclusion, nearly all of Newman's claims in this case against the UD defendants were based on events that occurred prior to his filing of *Newman I* and constituted claims that were or could have been litigated in that previous action.[13] The allegations set forth in *Newman III*'s complaint were virtually identical to those set forth in corresponding portions of *Newman I*, and the complaint in this case did not identify as a basis for liability any action allegedly undertaken by any UD employee after *Newman I* was filed.

{¶ 32} Although Newman's appellate brief alludes to his having only later discovered that Bernal allegedly engaged in retaliatory actions against him (*see* Appellant's Brief, p. 22, 23, 24), no such allegations appeared in his complaint. Rather, Newman's latest complaint failed to attribute any particular conduct to Bernal specifically, instead incorporating her within the general allegation that "[a]ll of the individual Defendants aided and abetted UD in engaging in a pattern-or-practice of retaliatory harassment against Plaintiff." (1/13/19 Complaint, Second Cause of Action, ¶ 63.)

{¶ 33} Nothing on the face of that pleading suggests that Bernal was added as a

---

[13] The few exceptions will be addressed below in our judicial immunity analysis.

defendant due to actions Newman could not have asserted against her or the other UD defendants at the time *Newman I* was filed. Additionally, nothing in the record indicates that Newman presented any such argument to the trial court, and we decline to consider issues first introduced on appeal. *See State v. Schneider*, 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995), citing *State v. Coleman*, 37 Ohio St.3d 286, 294, 525 N.E.2d 792 (1988) ("It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed.").

{¶ 34} Finally, as to the fourth prong of a claim preclusion analysis, all of Newman's claims in this case against the UD defendants were based on the same series of events or occurrences that gave rise to his complaint in *Newman I*. Both complaints alleged that Newman complained to UD about what he perceived to be discriminatory and harassing conduct by the same female African-American student; that UD did not respond satisfactorily to his complaint; that UD thereafter discontinued his employment as an adjunct professor; and that his email and campus privileges also were revoked. Both complaints alleged that UD and its employees so acted in retaliation for Newman's protected activity. Without question, Newman's latest complaint sought relief based on the same factual underpinning on which his claims in *Newman I* were founded*.*

{¶ 35} As the record supports the existence of all four elements necessary for claim preclusion to apply, the trial court did not err by granting judgment in favor of the UD defendants on the basis of res judicata as to all claims that Newman litigated or could have litigated in *Newman I*.

*ii.      Judicial Privilege*

**{¶ 36}** Newman also contests the trial court's conclusion that portions of his first two causes of action against the UD defendants were based on activity protected by judicial privilege and were barred for that reason. (*See* 5/19/20 Decision, Order and Entry Granting Defendants' Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, p. 13-16.) The relevant portions of the trial court's decision state:

> The University Defendants argue that Newman's first two causes of action should be dismissed because they arise out of activity protected by * * * judicial privilege. The University Defendants argue that Newman's first cause of action is premised upon: (1) the University filing a motion to dismiss in his previous case in federal district court, (2) the University's outside attorney providing an allegedly contradictory explanation concerning Newman's ban from the University campus, and (3) the University's outside attorney participating in oral argument before the OCRC.

> As to the second cause of action, the University Defendants' [sic] argue that Newman's claim for aiding and abetting discrimination is based upon the same alleged actions asserted in his first cause of action, and that those actions were related to the University's defense of the claims against it in the previous federal lawsuit and before the OCRC, and therefore, are absolutely privileged.

> * * *

> The University Defendants assert that the judicial privilege extends

not only to attorneys, but also to parties to a judicial or quasi-judicial proceeding, and therefore, the judicial privilege extends to the University and the University employee defendants in this case. Newman contends that the judicial privilege only applies to lawyers and that the "nonlawyer University defendants" cannot use this privilege to dismiss his first two causes of action against them. The Court disagrees with Newman. Although Newman claims that there is nothing in the cases cited by the University Defendants to support the conclusion that judicial privilege should be extended to non-lawyers, the law on this matter instructs otherwise.

* * *

* * * [T]his Court concludes that the doctrine of judicial privilege extends to the University Defendants to the extent that any asserted cause of action is based on statements or actions made by the University Defendants, or their counsel, that were made during the course of their participation in the previous actions and were reasonably related to the proceeding(s) in which they were made. Therefore, construing the material allegations set forth in the Complaint and drawing all reasonable inferences in favor of Newman as the non-moving party as true, this Court finds that Newman could prove no set of facts in support of his claims that would entitle him to relief.

(Citations omitted.) (*Id.*, p. 13-15.)

{¶ 37} In his appellate brief, Newman affirmatively "withdraws" his aiding and abetting claim (the Second Cause of Action) to the extent it relies "on Ms. Dunlevey's

statements in the 2017 case" (i.e., *Newman I*). (Appellant's Brief, p. 16.)[14] He now seeks to proceed on that claim only as to Dunlevey's purported "**actions**." (Emphasis sic.) (*Id.*) He describes those "actions" as:

> (1) extending Law School Dean Strauss' ban on Mr. Newman visiting the law library and law building to UD's entire campus; (2) offering a conflicting explanation for UD's decision not to renew Mr. Newman's teaching contract and ending his UD teaching career at the OCRC February 1, 2018 hearing on Mr. Newman's employment discrimination charge and then lying to coverup [sic] UD's true retaliatory motive for these adverse actions; and (3) offering a conflicting explanation for all the bans UD placed on Mr. Newman by accepting [OCRC] Commissioner Patmon's suggestion that all of the bans were based on "safety concerns."

(*Id.*) (*See also* 1/31/19 Complaint, ¶ 30-31, 35-36, 44.)

{¶ 38} As a matter of public policy, the doctrine of absolute privilege in a judicial proceeding protects parties from defamation claims based upon any statement that "bears some reasonable relation to the judicial proceeding in which it appears." *Surace v. Wuliger*, 25 Ohio St.3d 229, 495 N.E.2d 939, 940 (1986), paragraph one of the syllabus. Alternatively termed a "litigation privilege," that form of protection "provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for *statements*

---

[14] The portions so withdrawn presumably would be those based on Newman's allegations that Dunlevey "tried to tortiously interfere" with his approved bankruptcy plan by contacting the bankruptcy trustee; falsely accused him of violating Fed.R.Civ.P. 11; and threatened him with criminal charges. (1/31/19 Complaint, ¶ 27.)

made during and relevant to judicial proceedings." (Emphasis sic.) *Reister v. Gardner*, Ohio Slip Opinion No. 2020-Ohio-5484, ___ N.E.3d ___, ¶ 8.[15] For the privilege to apply, the statement at issue "must be pertinent and material to the matter in hand," meaning that "it must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result." *Surace* at 231, quoting *Mauk v. Brundage*, 68 Ohio St. 89, 97, 67 N.E. 152 (1903). "Whether or not the occasion gives the privilege is a question of law for the court." *Id.*, quoting *Mauk* at 97-98; *see also Modler v. Modler*, 2d Dist. Montgomery No. 18206, 2000 WL 1162033, *3 (Aug. 18, 2000).

**{¶ 39}** The same absolute privilege extends to statements made during quasi-judicial proceedings. *Barilla v. Patella*, 144 Ohio App.3d 524, 534, 760 N.E.2d 898 (8th Dist.2001). The OCRC acts in a quasi-judicial capacity in proceeding on complaints filed before it. *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.*, 74 Ohio St.3d 120, 121, 656 N.E.2d 684 (1995), citing *State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm.*, 44 Ohio St.2d 178, 184-185, 339 N.E.2d 658 (1975). Thus, comments made in the course of hearings before the OCRC are privileged. *See Furlan v. Ohio Civ. Rights Comm.*, Cuyahoga C.P. No. CV-406022, 2001 WL 969121, *4 (Mar. 23, 2001).

**{¶ 40}** Newman's aiding and abetting claim against "all" defendants was sparsely worded in his complaint. (*See* 1/31/19 Complaint, Second Cause of Action, ¶ 60-64.) Substantively, that cause of action asserted only that "[a]ll of the individual Defendants

---

[15] The Supreme Court's *Reister* decision, issued on December 3, 2020, reversed a decision that the trial court in this case cited in support of its entry dismissing Newman's claims against Jackson Lewis and Dunlevey. (*See* 5/19/20 Decision, Order, and Entry Granting Defendants Jackson Lewis P.C. and Karen Dunlev[e]y's Motion to Dismiss, p. 15-16, citing *Reister v. Gardner*, 12th Dist. Butler Nos. CA2019-01-010, CA2019-01-011, CA2019-01-020, 2019-Ohio-4720, ¶ 24-26.) That reversal, however, has no effect on our assessment of the appropriate outcome in this case.

aided and abetted UD in engaging in a pattern-or-practice of retaliatory harassment against Plaintiff." (*Id.* at 63.) Allegations elsewhere in the complaint cited only a few instances of specific conduct alleged to have occurred after *Newman I* was filed on May 19, 2017, and attribute all of such conduct to a single individual, Dunlevey. (*See id.*, ¶ 30-31, 34-36, 43-44.)

{¶ 41} Newman argues that the absolute privilege protection did not encompass his aiding and abetting claim because that claim was "based on [Dunlevey's] retaliatory actions, not her statements," and because the relevant allegations "cannot be construed as defamation claims" (Appellant's Brief, p. 16-17), despite the defendants' efforts to characterize them as such.[16] Newman's arguments to that effect do not compel the result he seeks.

{¶ 42} Relevant to the distinctions Newman draws, the Ohio Supreme Court recently clarified that the subject privilege applies only to "*statements* made during judicial proceedings," and not to "conduct that is simply connected in some way to litigation." (Emphasis sic.) *Reister*, Ohio Slip Opinion No. 2020-Ohio-5484, __ N.E.3d __, at ¶ 14, citing *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449-450, 453 N.E.2d 693 (1983). Only one allegation about Dunlevey on which Newman's now-narrowed aiding and abetting claim depended could be said to describe "conduct that is simply connected in some way to litigation." *See id.* To the contrary, allegations that Dunlevey, during hearings on Newman's OCRC charges offered "a conflicting explanation" for UD's non-renewal of Newman's teaching contract and lied to conceal UD's "true * * * motive," and that she

---

[16] (*See* Brief of Defendants-Appellees UD, *et al.*, p. 19) (describing Newman's allegations as "thinly veiled defamation claims".)

falsely affirmed to the OCRC that the decision to ban Newman from UD's campus was based on "safety concerns" (*see* Appellant's Brief, p. 16, and 1/31/19 Complaint, ¶ 30-31, 35-36, 44), indisputably invoked *statements* Dunlevey purportedly made during the course of quasi-judicial proceedings. Newman cannot transform Dunlevey's words into non-privileged "actions" simply by labeling them as such. Dunlevey's alleged statements fell within the purview of absolute immunity.

{¶ 43} Furthermore, regardless of Newman's characterization of his second cause of action as one for aiding and abetting discrimination rather than one for defamation, we agree with the trial court's assessment that the privilege's scope is not limited to defamation claims. The Supreme Court of Ohio has held that "[a] statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against *a civil action* based thereon as long as the statement is relevant and material to the proceeding." (Emphasis added.) *Hecht v. Levin*, 66 Ohio St.3d 458, 613 N.E.2d 585 (1993), paragraph two of the syllabus. One month ago, the same Court pronounced that "[t]he litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from *future lawsuits* * * *." (Emphasis added.) *Reister* at ¶ 8, citing *Erie Cty. Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210, 171 N.E. 97 (1930), syllabus; *Willitzer*, 6 Ohio St.3d at 448-449, 453 N.E.2d 693; *Surace*, 25 Ohio St.3d 229, 495 N.E.2d 939, syllabus; *Hecht* at 460. The Court then emphasized: "To be clear, it still does that." *Id.*

{¶ 44} Decisions of numerous other Ohio courts also support a conclusion that the privilege bars not only defamation claims. *See, e.g., Nationstar Mtge., LLC v. Ritter*, 10th Dist. Franklin Nos. 14-AP-1000, 14-AP-1002, 2015-Ohio-3900, ¶ 4 (the trial court applied absolute privilege to bar fraud and intentional infliction of emotional distress claims);

*Seminatore v. Dukes*, 8th Dist. Cuyahoga No. 84032, 2004-Ohio-6417, ¶ 37-38 (finding civil conspiracy claim and other possible state law claims barred by absolute immunity). At least one Ohio court has found absolute immunity to bar a civil aiding and abetting claim. *See Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 95673, 2011-Ohio-351.

**{¶ 45}** Because we agree that claims for aiding and abetting discrimination, which Newman identifies as the basis for his Second Cause of Action, were subject to the privilege that protects statements made in the context of quasi-judicial proceedings, we conclude that the trial court did not err in granting judgment in favor of the UD defendants as to Newman's claims based on actions Dunlevey took to defend the UD parties in federal court proceedings or statements she made during OCRC proceedings. That privilege protected not only Dunlevey as the utterer of the statements at issue, but also the UD defendants as "parties" to the subject actions. *Reister* at ¶ 8.

**{¶ 46}** The remaining basis for Newman's claims against the UD defendants, then, is his allegation that on July 31, 2017, Dunlevey extended, indefinitely and to the entire UD campus, the law school dean's directive that temporarily prohibited Newman from entering law school property, and that she offered a "conflicting explanation" for that ban. (1/31/19 Complaint, ¶ 30-31.) The complaint's wording suggests that Dunlevey acted unilaterally in doing so (1/31/19 Complaint, ¶ 30-31), but can be read to assert that UD was liable for actions taken by Dunlevey in the course of representing the university. However, since Newman has not identified any basis upon which any individual UD defendant might be liable for Dunlevey's alleged actions of July 31, 2017, the trial court did not err in granting judgment in favor of the individual UD defendants as to the entirety of Newman's complaint. Thus, we proceed to examine that final allegation only as against

UD.

**{¶ 47}** Dunlevey's July 31, 2017 conduct occurred after the complaint in *Newman I* was filed on May 19, 2017. From this, it could be argued that res judicata is not applicable to this conduct, and, thus, is not a bar to UD's respondeat superior liability for Dunlevey's July 31 conduct. But Newman's admission concerning the timing of and the person who imposed the campus wide ban defeats such an argument.

**{¶ 48}** In his appellate brief, in the statement of facts, Newman makes the dispositive admission that "On March 21, 2017, UD General Counsel Mary Ann Recker banned Mr. Newman from UD's campus for the retaliatory reason that **"[Y]ou have developed a pattern of visiting the University's campus and then transforming that time on campus into the basis of an unfounded complaint against the University. Such disruption cannot continue."** (Emphasis sic.) Appellant's Brief, fn. 7. That footnote was referencing Newman's statement about an "endless pattern or practice of retaliatory harassment against Mr. Newman, on December 5, 2018 - *over one year and eight months after UD originally banned Mr. Newman from its campus* - a UD Police Officer tried to enforce UD's ban on Mr. Newman visiting the campus." (Emphasis sic.) *Id.* at 13. The preceding sentence means that as of December 5, 2018, after Newman filed suit against Dunlevey in *Newman II* for imposing the ban, Newman himself still attributed the campus-wide ban to General Counsel Recker's action taken March 21, 2017. In addition, Newman named General Counsel Recker as a defendant in *Newman I* as part of UD's retaliation effort.

**{¶ 49}** These factual admissions mean that Dunlevey did not initiate the campus-wide ban at all. Newman has admitted it was general counsel Recker who imposed the

ban and that it was initiated on March 21, 2017, well before *Newman I* was filed. Therefore, a claim about the campus-wide, apparently indefinite ban could have been included in *Newman I*. In fact, it *was* included in *Newman I*. The *Newman I* complaint (Exhibit 1), filed May 19, 2017, alleged at ¶ 73 "In her March 21, 2017 email reply to Plaintiff's demand letter, [Mary Ann] Recker [UD's general counsel] * * * *closed her response by banning Plaintiff from UD's campus*. Recker stated 'Accordingly, and particularly since you no longer have any association with the University and therefore no valid reason to be on University property, the University asks that you no longer visit the University of Dayton campus.' " (Emphasis added.) Therefore, a claim about alleged retaliation against Newman by the imposition of a campus-wide ban was barred by res judicata because the claim was in fact included in the prior litigation that was dismissed on the merits. And, any confirmation, acknowledgement, continuation or affirmation of that ban on July 31, 2017 by Dunlevey, who was in privity with the University, was thus barred by res judicata as a matter of law.

{¶ 50} In summary, the trial court did not err by dismissing all of Newman's causes of action against UD and the individual UD defendants upon the basis of res judicata, judicial privilege, or both. Newman's Assignment of Error #2 is overruled.

**Assignment of Error #1 – Dismissal of Claims against Outside Counsel**

{¶ 51} Newman's remaining assignment of error contends that the trial court erred by granting Jackson Lewis and Dunlevey's motion to dismiss Newman's claims against them on the basis of judicial privilege. Newman argues that either the trial court "misapplied" the standard applicable to Civ.R. 12(B)(6) dismissal or Dunlevey "exceeded the privilege." (Appellant's Brief, p. 13.)

a. Standard of Review

{¶ 52} A motion under Civ.R. 12(B)(6) to dismiss for failure to state a claim upon which relief can be granted "is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992); *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.). The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Grover* at ¶ 16, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Such motions should be granted only where the complaint, so construed, demonstrates that the plaintiff can prove no set of facts entitling him or her to relief. *Sherrod v. Haller*, 2017-Ohio-5614, 94 N.E.3d 148, ¶ 6 (2d Dist.). "The standard for dismissal under Civ.R. 12(B)(6) is consistent with Civ.R. 8(A), which requires that a complaint 'contain * * * a short and plain statement of the claim [or claims] showing that the [plaintiff] is entitled to relief.' " *Toney v. Dayton*, 2017-Ohio-5618, 94 N.E.3d 179, ¶ 36 (2d Dist.).

{¶ 53} "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Duer v. Henderson*, 2d Dist. Miami No. 2009-CA-15, 2009-Ohio-6815, ¶ 68, quoting *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. This means the appellate court "must independently review the complaint to determine whether dismissal is appropriate." *Boyd v. Archdiocese of Cincinnati*, 2d Dist. Montgomery No. 25950, 2015-Ohio-1394, ¶ 13, quoting *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 60 (8th Dist.).

{¶ 54} In conducting that review, we are "bound to assume that the facts pleaded

in the complaint are true, but the same does not apply to conclusions of law that the pleader contends are proved by those facts." *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 8 (2d Dist.). We are not to consider "unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint." *Boyd* at ¶ 13, quoting *Wright v. Ghee*, 10th Dist. Franklin No. 01AP-1459, 2002-Ohio-5487, ¶ 19.

b. Analysis

**{¶ 55}** Consistent with our previous discussion concerning judicial privilege, Dunlevey's conduct in pending court actions or during proceedings before the OCRC (*see* 1131119 Complaint, ¶ 27, 35-36, 44) implicate statements entitled to absolute privilege as a matter of law. Thus, the trial court correctly granted Dunlevey and Jackson Lewis's Civ.R. 12(B)(6) motion to dismiss Newman's causes of action premised upon such statements.

**{¶ 56}** Turning, then, to Newman's assertion that on July 31, 2017, Dunlevey enlarged and extended the law school dean's directive banning Newman from the UD campus, this claim, though not barred by judicial privilege, is, as discussed, barred as a matter of law by res judicata. Thus, the trial court, though incorrectly relying upon the judicial privilege doctrine, did not err by granting Dunlevey and Jackson Lewis's Civ.R. 12(B)(6) motion to dismiss regarding Newman's cause of action relating to Dunlevey's July 31, 2017 conduct.

**{¶ 57}** The trial court did not err by dismissing all of Newman's causes of action against Dunlevey and Jackson Lewis. Newman's first assignment of error is overruled.

**Assignment of Error #3 – Order Denying Motion to Disqualify**

{¶ 58} Given our resolution of Newman's first two assignments of error, Assignment of Error #3 is moot. This final assignment of error is overruled on this basis.

## Conclusion

{¶ 59} Having overruled all of Newman's assignments of error, the judgments of the Montgomery County Common Pleas Court are affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Peter K. Newman
Daniel G. Rosenthal
Gretchen M. Treherne
Hon. Gerald Parker