[Cite as *Stewart v. Gentile*, 2025-Ohio-5012.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

ANNETTE STEWART,

Plaintiff-Appellant,

v.

THOMAS GENTILE ET AL.,

Defendants-Appellees.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 24 JE 0024

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 23-CV-375

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. W. Jeffrey Moore,* Moore & Yaklevich, for Plaintiff-Appellant Annette Stewart and

*Atty. Jeffrey A. Stankunas, Atty. Aaron M. Glasgow* and *Atty. Dale D. Cook*, Isaac Wiles Burkholder & Miller, LLC, for Defendants-Appellees Thomas Gentile, Robert Bell, Jefferson County Health Department, Jefferson County Board of Commissioners, and Jefferson County, Ohio and

*Atty. Matthew S. Teeter* and *Atty. Andrew N. Yosowitz*, Teetor Westfall, for Defendant-Appellee Denese Nicole Balakos.

Dated:  November 3, 2025

**DICKEY, J.**

**{¶1}** Appellant, Annette Stewart, appeals from the September 26, 2024 judgment of the Jefferson County Court of Common Pleas granting the motions for judgment on the pleadings filed by Appellee Denese Nicole Balakos, and by Appellees Thomas Gentile, Robert Terry Bell, Sheryl Suppa, Carla Gampolo, Jefferson County Health Department ("Health Department" or "Board of Health"), Jefferson County Board of County Commissioners ("Board"), and Jefferson County (collectively Appellees). The trial court dismissed Appellant's amended complaint in its entirety based on Appellees' absolute immunity in a judicial proceeding (litigation privilege). On appeal, Appellant contends the court erred in determining Appellees were entitled to the litigation privilege. Appellant also asserts the court erred in finding that some of the facts she presented in her amended complaint were insufficient to constitute actionable claims.

**{¶2}** For the following reasons, we find the trial court correctly applied the litigation privilege to bar all of Appellant's claims because Appellees' statements and reports provided to the Ohio Auditor Office's Special Investigations Unit ("SIU") are protected from civil liability. We further find that the SIU is a quasi-judicial body and as such, Appellees are absolutely immune from civil liability for statements, affidavits, and reports made during and relevant to judicial and quasi-judicial proceedings. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** On January 5, 2022, the Jefferson County Grand Jury indicted Appellant on four counts: (1) count one, theft in office; (2) count two, record tampering; (3) count three, making false statements; and (4) count four, having an unlawful interest in a public contract.

**{¶4}** Count one alleged Appellant committed theft in office by using her public office to falsify records to increase her salary without knowledge or approval of the Board of Health resulting in an overpayment of $63,107. Count two charged Appellant with record tampering in violation of R.C. 2913.42(A)(1) by falsifying or altering the minutes of an April 25, 2017 Board of Director's Meeting of the Board of Health. Count three, falsification in violation of R.C. 2921.13(A)(9), alleged Appellant made a false statement

with the intent to commit or facilitate the commission of a theft offense. Count four charged Appellant with having an unlawful interest in a public contract in violation of R.C. 2921.42(A)(2) by using her authority or influence of her public office to secure a public contract for the employment of her son by forwarding a document to the Jefferson County Auditor.

{¶5} Appellant was acquitted on all four counts following a jury trial. Thereafter, Appellant filed a complaint against Appellees. All individual Appellees were sued in official and individual capacities. Appellant subsequently filed an amended complaint on May 15, 2024. Both the original and amended complaints contain the same amounts, everything in excess of $25,000. Neither the original nor amended complaints contain specific titles/headings. However, both the original and amended complaints specify the following by name: malicious prosecution, abuse of process, false light, and civil conspiracy.

{¶6} In her amended complaint, Appellant related that she began working for the Health Department in 1989 and became Assistant Administrator in 2017. Appellant worked under the direction of Frank Petrola, the President/Director of the Health Department, and was his "right-hand" woman. Appellee Gentile was a county commissioner. The commissioners owned the building that the Health Department occupied. Appellees Balakos and Bell were Health Department board members. Appellees Suppa and Gampolo were employees of the Health Department during the relevant times.

{¶7} Appellant alleged that Appellee Gentile had a long-standing feud with Petrola concerning the disrepair of the building. The Health Department closed for several days due to the condition of the building which forced the commissioners to make repairs. Appellant alleged that Petrola told the public he was going to force Gentile and the commissioners to spend the money of Gentile's "daddy" to repair the building. Appellant claimed Gentile became furious and set out to cause problems for Petrola and gain power over the Health Department.

{¶8} Appellant alleged that Appellee Gentile engaged the Ohio Auditor's Office to conduct a forensic audit of the Health Department in hopes of discovering information that would force her and Petrola out of their positions. Appellant indicated that Appellee

Balakos' husband works for the Ohio Auditor's Office and said he gathered evidence from the Jefferson County Auditor's Office at the direction of Appellees Gentile, Balakos and Bell to use against her and Petrola.

{¶9} Appellant further alleged that Appellees Gentile, Balakos and Bell solicited her help to smear and politically injure Petrola. Appellant claims Gentile and Bell told her that if she helped them, she would not have to fear losing her job and that things would be better for her. Appellant claims Balakos told her she did not trust Appellant and Appellant would have to earn her trust.

{¶10} Appellant maintained that when she refused to help, Appellees Gentile, Balakos, and Bell began humiliating and criticizing her and overloaded her with work. Appellant alleged they also began questioning her past practices, including the financial transactions she performed with Petrola, and even asked her to recommend that the Board eliminate her job. Appellant also indicated that Balakos, with the help of Gentile and Bell, began modifying policies and procedures to create violations and discrepancies for her and Petrola. Appellant said that Bell restricted her email and internet access which rendered her unable to complete her job duties.

{¶11} Appellant also alleged that after Appellee Gentile's contact with the Ohio Auditor's Office, Appellees Balakos and Bell independently requested an investigation and audit. Appellant claimed Balakos and Bell accused her and Petrola of misappropriating funds, theft, giving themselves fraudulent raises, wrongfully hiring Appellant's son, creating false meeting minutes, and other illegal behaviors.

{¶12} Appellant indicated she and Petrola were required to attend a public meeting where Appellee Bell appeared on behalf of Appellees Gentile and Balakos. Appellant said that in front of all attendees, Bell requested a forensic review and audit of the Health Department and the activities of Appellant and Petrola because it appeared they lacked professionalism and competency. Appellant alleged that Appellees Suppa and Gampolo also falsely accused her of hiring her son knowing she could not do so, which resulted in criminal charges against her for illegal interest in a public contract.

{¶13} Appellant claimed that from 2018 until 2022, Appellees Gentile, Balakos, Bell, Suppa, and Gampolo continued to harass and intimidate her with these false allegations by telling newspapers, the media, and the public of her alleged theft, fraud,

Case No. 24 JE 0024

tampering, and illegal hiring of her son. Appellant claimed she was falsely charged, maliciously prosecuted, and faced a maximum of nine years in prison. Appellant alleged that Appellees did this to ruin her employment reputation and good name, made the allegations without investigation or probable cause, and knew the allegations were false.

{¶14} On May 29, 2024, Appellee Balakos filed an answer. The next day, Appellees Gentile, Bell, Suppa, Gampolo, Health Department, Board, and Jefferson County filed an answer.

{¶15} On July 8, 2024, Appellees Gentile, Bell, Suppa, Gampolo, Health Department, Board, and Jefferson County filed a Civ.R. 12(C) motion for judgment on the pleadings. On July 29, 2024, Appellee Balakos filed a Civ.R. 12(C) motion for judgment on the pleadings. On September 23, 2024, the trial court held a hearing on the motions.

{¶16} On September 26, 2024, the trial court granted Appellees' motions and dismissed Appellant's amended complaint. The court found some of the facts in Appellant's complaint not actionable and even accepting Appellant's other allegations as true, Appellees were absolutely immune from civil liability in judicial proceedings. The court held that this immunity covered pre-indictment, statements, and affidavits. The court further held that Appellant's allegations of willful and wanton behavior failed to overcome absolute immunity.

{¶17} Appellant filed a timely notice of appeal and raises five assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRONEOUSLY DETERMINED THAT THE DEFENDANTS WERE ENTITLED TO ABSOLUTE IMMUNITY IN GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS.**

{¶18} In her first assignment of error, Appellant asserts the litigation privilege does not apply to any person or entity that provides false information to the police or investigators which helps them to initiate criminal charges. In support, Appellant cites to *Scott v. Patterson*, 2003-Ohio-3353 (8th Dist.). Appellant contends Appellees are not absolutely immune from civil liability because they helped initiate and pursue criminal

Case No. 24 JE 0024

charges by insisting that the State of Ohio investigate and audit her actions, books, and work. Appellant also maintains that political subdivision immunity does not apply to a motion for judgment on the pleadings because immunity is an affirmative defense that relies on information outside of the complaint. Appellant asserts a plaintiff is not required to anticipate or predict a political subdivision's defenses or to plead facts to counteract them.

{¶19} In response, Appellees posit that Appellant misreads and misapplies *Scott.* Appellees submit that the court in *Scott* properly applied the Ohio Supreme Court's decision in *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497 (1994), that absolute immunity attaches to statements, affidavits, or other information a person provides to a prosecutor in reporting a crime. Citing *Sweeney* and *Barnes v. Beachwood*, 2006-Ohio-3948 (8th Dist.), Appellees submit that absolute immunity protects any person who makes statements reporting a crime to a prosecutor, even if those statements are false or made in bad faith with actual malice. Appellees also cite *Daher v. Cuyahoga Community College Dist.*, 2021-Ohio-2103 (8th Dist.), and submit that as long as the statements made bear some reasonable relation to the activity reported, the person reporting is absolutely immune from civil liability.

{¶20} Appellees further counter that R.C. 2921.22(A)(1) imposes a duty on them to provide information about Appellant's potential felony conduct. Appellees assert that Appellant based her entire amended complaint on Appellees' disclosure of information to law enforcement and R.C. 2921.22(A)(1) provides that no person shall fail to report to law enforcement any felony that they know has been or is being committed. Appellees conclude they are protected under former R.C. 2921.22(H) from civil liability.

{¶21} The trial court dismissed Appellant's amended complaint solely on the basis of the litigation privilege. The court relied on *Sweeney* holding that "absolute immunity in judicial process goes from beginning to end and that includes pre-indictment, statements and even affidavits." (9/26/2024 Judgment Entry, p. 2). The court held that allegations of willful and wanton conduct do not overcome absolute immunity.

{¶22} This Court conducts a de novo review of a trial court's ruling on a Civ.R. 12(C) motion for judgment on the pleadings. *Pelletier v. Mercy Health Youngstown*, LLC., 2024-Ohio-2131, ¶ 10 (7th Dist.), citing *Ahmed v. Sargus*, 2005-Ohio-2382, ¶ 7 (7th Dist.).

We give no deference to the trial court's decision and apply the same principles as those used in analyzing a Civ.R. 12(B)(6) motion to dismiss. *See Woods v. Sharkin,* 2022-Ohio-1949, ¶ 29 (8th Dist.). Thus, we construe the material allegations of the complaint as true with all reasonable inferences taken in favor of the nonmoving party. Dismissal under Civ.R. 12(C) is proper "only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him or her to relief." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Fam. Servs.*, 2021-Ohio-4096, ¶ 13, quoting *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17.

{¶23} We also note that Civ.R. 8(A) requires only a "short and plain statement of the claim showing that the party is entitled to relief, and a demand for judgment for the relief to which the party claims to be entitled." Further, a motion for judgment on the pleadings tests the legal sufficiency of the allegations and not their evidentiary support. *Hill v. Schildmeyer*, 2024-Ohio-3261, ¶ 1 (1st Dist.).

{¶24} The litigation privilege grants absolute immunity from civil liability to "judges, counsel, parties, and witnesses" for statements they make "during and relevant to judicial proceedings." *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448-449 (1983) (citations omitted). This privilege protects the judicial process by removing the fear of future civil liability by those providing relevant information to help courts seek the truth. *Reister* at ¶ 14, citing *Willitzer* at 449 and *Surace v. Wuliger*, 25 Ohio St.3d 229, 233 (1986). The litigation privilege applies to "statements made which bear some reasonable relation to the activity reported." *Sweeney*, 69 Ohio St.3d at 497. The privilege applies even if the statements made are intentionally false or made with ill will or malice. *See Theisler v. DiDomenico*, 140 Ohio App.3d 379, 385 (7th Dist. 2000). The litigation privilege extends to statements made during every step of a judicial proceeding. *Sweeney* at 506.

{¶25} Ohio courts have extended the litigation privilege to statements made in quasi-judicial proceedings, including statements to the Equal Employment Opportunity Commission (*Akarah v. Ohio Dept. of Rehab. & Correction*, 2024-Ohio-4499, ¶ 18 (10th Dist.)); the Ohio Civil Rights Commission (*Newman v. Univ. of Dayton*, 2021-Ohio-1609, ¶ 39 (2d Dist.)); and the police (*Lasater v. Vidahl*, 2012-Ohio-4918, ¶ 13 (9th Dist.)). Ohio courts have also expanded the litigation privilege to bar claims in addition to defamation claims. Such claims include fraud, intentional infliction of emotional distress, and civil

conspiracy. *See Newman* at ¶ 44, citing *Nationstar Mtge., LLC v. Ritter*, 2015-Ohio-3900 (10th Dist.) (aiding and abetting civil claim); *Daher,* 2021-Ohio-2103, at ¶ 26 (8th Dist.) (privilege applies to malicious prosecution, defamation, intentional infliction of emotional distress, civil conspiracy, aiding and abetting); *Seminatore v. Dukes*, 2004-Ohio-6417 (8th Dist.) (civil conspiracy and other state law claims).

**{¶26}** In *Michael v. Kleiboemer*, 2024 WL 51172 (N.D. Ohio Jan. 4, 2024), the court denied the plaintiff's motion to amend her complaint to add allegations of defamation against a village councilmember. The plaintiff was a fiscal officer for one township and a temporary deputy fiscal officer for another. She sought to amend her complaint to include the defendant's reported allegations of fraud and criminal misconduct against her to the Ohio Auditor's Office. The plaintiff alleged that the defendant reported to the Ohio Auditor's Office that she overcharged the village on an invoice and illegally used township monies to fund her federal lawsuit.

**{¶27}** The Ohio federal court reviewed the Ohio Supreme Court's expansive view of the litigation privilege and the circumstances of when a statement is made in a judicial proceeding. *Id.* at *2, citing *Surace,* 25 Ohio St.3d 229, 233 (1986). In denying the plaintiff's motion to amend her complaint to include the defamation claim, the court found that absolute privilege applied to the defendant's statements to the auditor's office. *Id*. at *4. The court observed the Ohio Supreme Court's expansive view of the litigation privilege and the Court's rationale that public policy required the free exchange of statements about possible criminal activity to help courts seek the truth without reporters fearing civil liability. *Id*. at *4. The court relied on *Sweeney* and the appellate court's decision in *Lasater*, 2012-Ohio-4918 (9th Dist.) and held that the statements made to the Ohio Auditor's Office were covered by the litigation privilege because they were statements reporting criminal activity to a law enforcement agency as the public fraud and corruption section of the Auditor's Office investigated and developed criminal cases, which protected public integrity. *Kleiboemer* at *4. The federal court concluded it would be futile for the plaintiff to amend her complaint to include defamation based on these statements because they were subject to absolute immunity under the litigation privilege. *Id*.

**{¶28}** In the instant case, we find that all of Appellees' statements, requests, and reports made to the SIU are absolutely immune under the litigation privilege. Appellant asserted in her amended complaint that Appellees requested a forensic audit by the Ohio Auditor's Office and provided false statements and reports to the SIU, a quasi-judicial body.

**{¶29}** Accordingly, Appellees' requests for an audit and their statements and reports made to the SIU are protected by the litigation privilege. Moreover, the statements made at public meetings and elsewhere are also protected by the litigation privilege because they are reasonably related to the charges.

**{¶30}** Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF-APPELLANT'S CLAIMS FOR MALICIOUS PROSECUTION, AS THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT DEFENDANTS PURSUED THE CHARGES AGAINST HER WITHOUT PROBABLE CAUSE AND WITH MALICIOUS INTENT.**

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT'S INSUFFICIENCY FINDINGS ON THE PLAINTIFF-APPELLANT'S ABUSE OF PROCESS CLAIM WERE CLEARLY AND MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR NO. 5

**THE TRIAL COURT ERRED WHEN FINDING THAT PLAINTIFF-APPELLANT DID NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

**{¶31}** In her second assignment of error, Appellant contends she presented sufficient evidence of a malicious prosecution claim to survive Appellees' motions for judgment on the pleadings. In her third assignment of error, Appellant asserts the trial

court's determination as to her abuse of process claim was against the manifest weight of the evidence. Appellant also challenges Appellees' assertion that we must dismiss her abuse of process claim because it conflicts with her malicious prosecution claim. In her fifth assignment of error, Appellant contends she stated a claim for intentional infliction of emotional distress in paragraphs 49-54 and 58 of her amended complaint. Appellant argues that even though she failed to identify the claim by name, she nevertheless presented facts to establish it.

{¶32} Because Appellant's second, third, and fifth assignments of error are interrelated, we will consider them together.

{¶33} The amended complaint specifies by name malicious prosecution and abuse of process claims. Regarding malicious prosecution and abuse of process, Appellees contend Appellant cannot sustain the claims because she alleged that the criminal charges lacked probable cause. A malicious prosecution claim requires a plaintiff to prove a lack of probable cause in order to sustain the claim. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990). An abuse of process claim requires the existence of probable cause as one of its elements to sustain the claim. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 294 (1994).

{¶34} Appellant asserts Civ.R. 8(E) allows for alternative pleading and inconsistent claims. Appellees respond that the proper standard of review is de novo and not insufficiency of the evidence or manifest weight. Appellees further contend that Appellant cannot sustain her malicious prosecution claim because she failed to establish a nexus between the conduct she alleged they performed and the initiation of criminal proceedings against her. Appellees submit that the prosecutor filed the charges and Appellant failed to allege how their conduct was connected to the indictment or her prosecution.

{¶35} Appellees further contend Appellant cannot establish the elements of an abuse of process claim because she alleges that no probable cause existed for the charges brought against her. Appellees submit that a necessary element to establish an abuse of process claim is to show that probable cause existed for the charges.

{¶36} As Appellees note, the proper standard of appellate review is de novo as we are reviewing the trial court's judgment on the motions for judgment on the pleadings.

Case No. 24 JE 0024

To establish a malicious prosecution claim, the plaintiff must be able to prove: "(1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell*, 53 Ohio St.3d at 146 (1990). To establish an abuse of process claim, the plaintiff must show: "(1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Yaklevich*, 68 Ohio St.3d at 294 (1994).

{¶37} The Ohio Supreme Court in *Yaklevich* acknowledged the significant differences between malicious prosecution and abuse of process claims. *Id.* at 300. It held that the key consideration in a malicious prosecution claim was whether probable cause existed to bring the criminal action, while the key consideration in an abuse of process claim was whether "an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Id.*

{¶38} In *Daher*, 2021-Ohio-2103, at ¶ 2 (8th Dist.), the plaintiff filed a civil complaint against the college and campus security officers after he was fired from his part-time job as a police dispatcher. He was indicted for the unauthorized use of campus property and the case was dismissed at the state's request four months later. Daher's civil complaint against the defendants included malicious prosecution and intimidation claims. He alleged that the defendants knowingly and maliciously initiated proceedings with the prosecutor by providing false writings about his access to the computer systems to improperly influence the office. *Id.* at ¶ 2, 17.

{¶39} In affirming the trial court's granting of the motion for judgment on the pleadings, the appellate court held that the litigation privilege barred Daher's malicious prosecution and intimidation claims. The court identified the elements of malicious prosecution and recognized that the "privilege is known to protect against any claim regarding the privileged statements including but not limited to malicious prosecution claims, defamation claims, intentional infliction of emotional distress, civil conspiracy, and aiding and abetting claims." *Id.* at ¶ 26. The court noted that no known exception existed to this privilege and found that the defendants were "entitled to absolute immunity for any cause of action regarding those statements." *Id.* at ¶ 19, 25. The appellate court also

applied the litigation privilege to bar Daher's intimidation claim. The court held that the litigation privilege applied not only to bar the claim, but the writings he relied upon for his claims were protected by the litigation privilege so that he could not use them to prove his claim. *Id*. at ¶ 27.

**{¶40}** Accordingly, the litigation privilege bars Appellant's malicious prosecution and abuse of process claims. Moreover, the statements and reports submitted to the SIU are protected by the privilege and they cannot be used to prove Appellant's claims.

**{¶41}** Further, Appellant could not maintain her malicious prosecution and abuse of process claims. As outlined above, one of the elements to establish her malicious prosecution claim is that the criminal charges must have lacked probable cause. Contrarily, to establish her abuse of process claim, Appellant must allege that: "(1) a legal proceeding has been set in motion in proper form and *with probable cause*; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Yaklevich,* 68 Ohio St.3d at 294 (1994) (emphasis added). The Ohio Supreme Court acknowledged the significant differences between malicious prosecution and abuse of process claims in *Yaklevich*. *Id.* at 300. The Court held that the key consideration in a malicious prosecution claim was whether probable cause existed to bring the criminal action, while the key consideration in an abuse of process claim was whether "an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Id.*

**{¶42}** In *Tablack v. Wellman*, 2006-Ohio-4688, ¶ 141 (7th Dist.), this court noted that a malicious prosecution claim is incompatible with an abuse of process claim because the former requires a plaintiff to show a lack of probable cause while the latter requires the plaintiff to show that the defendant set in motion a legal proceeding with probable cause. We distinguished the two claims by acknowledging that while a malicious prosecution claim "refers to the improper initiation of a lawsuit, abuse of process deals with the use of a properly initiated lawsuit for an improper purpose." *Id.* at ¶ 140, citing *Robb v. Chagrin Lagoons Yacht Club, Inc*., 75 Ohio St.3d 264, 271 (1996).

**{¶43}** This court also observed the incompatibility of asserting the two claims based on the probable cause element. *Id*. at ¶ 141. We determined that the abuse of

process claim required probable cause as an element and the plaintiff was asserting that this necessary element did not exist by asserting a malicious prosecution claim that required a lack of probable cause as a necessary element. We held that the plaintiff defeated their own abuse of process claim by asserting that the criminal charges against them were without factual or legal basis. *Id*. at ¶ 141, 144.

{¶44} This court recently referred to *Tablack* in *Turkoly v. Gentile*, 2021-Ohio-965 (7th Dist.). In *Gentile*, we held that a plaintiff must prove the element of probable cause when asserting an abuse of process claim. *Id*. at ¶ 20. We refused to adopt the request to adopt a different test that omitted the requirement of probable cause. *Id*. We held that while the existence of probable cause is usually a jury question, a trial court can decide the issue when the plaintiff "fails to meet his or her burden of establishing that a defendant instituted a legal proceeding with probable cause." *Id*. at ¶ 23. Citing *Tablack*, we affirmed the trial court's directed verdict in favor of Gentile as to the abuse of process claim because the Turkolys failed to plead that Gentile initiated his case against them with probable cause. *Id*. at ¶ 29-30. We held that while the Turkolys could have considered raising a malicious prosecution claim, they did not do so. *Id.*

{¶45} The trial court in the case at bar properly dismissed Appellant's malicious prosecution and abuse of process claims based on the litigation privilege. The litigation privilege bars all civil claims against Appellees for statements and reports to the SIU. Further, the litigation privilege bars Appellant's attempts to use the statements and reports Appellees provided for the criminal indictment as the evidence for her malicious prosecution and abuse of process claims. Ohio law provides that the litigation privilege bars these civil claims outright and *Daher* holds that Appellant cannot use the statements or reports provided to the SIU to prove her claims.

{¶46} In addition, Appellant repeatedly stated in her amended complaint that Appellees helped initiate the criminal charges against her without probable cause. (5/15/2024 Amended Complaint, p. 8-10, ¶ 40, 41, 46, 47, 56). Under our case law, Appellant cannot maintain her abuse of process claim because she asserted a malicious prosecution claim and alleged that the charges against her lacked probable cause.

Case No. 24 JE 0024

{¶47} Regarding intentional infliction of emotional distress, as stated, Ohio courts have expanded the litigation privilege to bar such claims. *See Newman*, 2021-Ohio-1609, at ¶ 44 (2d Dist.).

> "In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove '(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.'"

*Turkoly*, 2021-Ohio-965, at ¶ 31 (7th Dist.), quoting *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 14 (quoting *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994)).

{¶48} The amended complaint does not allege a claim for intentional infliction of emotional distress. Because Appellant did not plead an intentional infliction of emotional distress claim, the trial court had no reason to address it. *See generally Fletcher v. Univ. Hosps. of Cleveland*, 2008-Ohio-5379, ¶ 15.

{¶49} Appellant's second, third, and fifth assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ERRED WHEN FINDING THAT PLAINTIFF-APPELLANT'S ALLEGATIONS IN THE COMPLAINT WERE NOT LEGALLY SUFFICIENT TO SUSTAIN AN ACTIONABLE CLAIM.**

{¶50} In her fourth assignment of error, Appellant contends that paragraphs 26, 35, 36, 37, 38, and 39 of her amended complaint provided sufficient facts to show that Appellees furthered her criminal prosecution. Appellant asserts that construing these facts as true and taking all inferences in her favor, her amended complaint sufficiently states her civil claims.

{¶51} Appellee Balakos responds she is not mentioned in paragraphs 26 and 37 of Appellant's amended complaint and the other allegations are protected by the litigation privilege. Balakos contends the paragraphs specified by Appellant also contain unidentified and amorphous claims. All Appellees further assert that Appellant's

malicious prosecution claim was filed beyond the one-year statute of limitations and her other claims were filed beyond the two-year statute of limitations set forth in R.C. 2744.04(A) of the Political Subdivision Tort Liability Act. Appellees submit Appellant was required to assert her claim against them within a maximum of two years after the cause of action accrued, which was when Appellant was last employed, since her allegations discuss retaliatory actions taken by Appellees during her employment. Appellees note that the latest the allegations should have been brought was before Appellant's employment ended on August 16, 2019. Appellees note that the instant lawsuit was not initiated until September 13, 2023. Appellees implore us to apply the statute of limitations to dismiss Appellant's amended complaint even though the trial court did not rely on the statute of limitations in its judgment.

{¶52} The trial court did not address these statute of limitations arguments and relied only on the litigation privilege to bar Appellant's claims. While the court also held that some of Appellant's facts were not actionable, it did not identify those facts or otherwise explain this finding. Appellate courts generally do not address issues that a trial court did not consider. *Fast Tract Title Servs., Inc. v. Barry*, 2024-Ohio-5216, ¶ 42 (8th Dist.), citing *e.g., Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21; ("[A]n appellate court limits its review to issues actually decided by the trial court in its judgment."); *Fayak v. Univ. Hosps.*, 2020-Ohio-5512, ¶ 28 (8th Dist.); and *Crestmont Cleveland Partnership v. Ohio Dept. of Health,* 139 Ohio App.3d 928, 935 (10th Dist. 2000). Thus, our review is limited to the litigation privilege.

{¶53} Appellant's fourth assignment of error is without merit.

## CONCLUSION

{¶54} For the foregoing reasons, Appellant's assignments of error are not well-taken. The September 26, 2024 judgment of the Jefferson County Court of Common Pleas granting Appellees' motions for judgment on the pleadings and dismissing Appellant's amended complaint in its entirety based on Appellees' absolute immunity in a judicial proceeding (litigation privilege) is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**